GEORGE GOSSIN and HARMAR DENNY v. JAMES BROWN.

1. Where there are no special circumstances manifesting an intention to oblite-
rate the original obligation, and to destroy the securities taken for its payment,
equity will regard the duty as still existing at the option of the surety.

2. The acceptance by him of *choses in action* as collaterals, and the omission to ask
immediately upon payment of the debt by him for an assignment of a mortgage
given by the principal debtor for his security, are not sufficient evidence of such
intention.

ERROR to the District Court of Allegheny.

*Sept.* 22. This was an action of ejectment, in which James
Brown was plaintiff, and George Gossin, the tenant in possession,
and Harmar Denny, his lessor, were the defendants. The facts
of the case are presented very fully in the following summary pre-
pared by the plaintiffs in error, who were the defendants below :—

"The property in controversy—lot No. 10, in Lawrenceville—was
owned by Gossin, under whom Brown and Denny claim title. 13th
Sept. 1836, Gossin and wife conveyed in fee to Denny a part of
said lot for the consideration of $1,000. Denny gave to Gossin a
written stipulation of the same date, to re-convey the premises if
the consideration should be repaid in one year. Of this sum $700
were paid by Gossin in 1840. The deed of conveyance was recorded
24th Sept. 1836. The defeasance was not recorded.

"Sept. 14, 1841, for the consideration of $4,500, Gossin and wife
by their deed conveyed to Denny in fee the whole of lot No. 10.
Recorded 23d Sept. 1841. This deed, though absolute in terms,
was given to protect Denny against his liability as endorser of
Gossin's note at four months, for $4,500, discounted at the Bank of
Pittsburgh, the proceeds paid to Gossin. If Denny were saved
harmless, the deed to be void; if subjected to the payment of the
note, the deed to be absolute and indefeasible.

"The note was renewed once or twice, but protested for non-pay-
ment on the 29th March, 1843, and paid by Denny the 1st Feb.
1844, together with interest thereon, and cost of protest, the aggre-
gate being $4,728.88. Denny was now regarded as the owner of
the property, and accordingly, on the 1st April, 1844, gave a lease
in writing of the premises to Gossin for one year, he stipulating to
re-deliver the premises at the end of the time in good repair.

"Brown derived title under a mortgage of Gossin to E. Harding,
dated 5th Feb. 1842, recorded 21st May, 1842; defeasible upon
the payment of $6,640.28 in one year. Gossin had borrowed the
amount from Harding, and gave his promissory note, endorsed by

Brown, at the same time executing a bond and mortgage securing the payment thereof. Of the sum mentioned, Brown, a few days after the loan, received $1,000, on the check of Gossin.

"The note was not paid at maturity. Brown, on the 8th Feb. 1843, confessed a judgment to Harding for the amount. On the 5th July, 1843, satisfaction was entered on this judgment, Brown having two days previous (3d July) executed a mortgage to Harding of his Market street property, to secure the original loan to Gossin. This mortgage was paid by Brown to Harding the 5th July, 1845, as stated by Harding and Brown. Nothing was said at the time about an assignment of Gossin's mortgage, by Harding to Brown. Harding stated in his deposition that he considered the mortgage as paid, and of no value thereafter.

"On the 8th of Feb. 1843, the date of his judgment to Harding, he received from Gossin an assignment of notes, bonds, and claims far exceeding, in their nominal value, the debt of Gossin to Harding. The object of the assignment was to secure Brown against his liability to Harding. These claims were in the hands of Brown, the 3d July, when he paid Gossin's mortgage. After various unsuccessful attempts to realize the claims assigned by Gossin to Brown, he desisted from further pursuit, but still retains in his hands the property assigned.

"On the 22d Sept. 1845, Harding, at the instance of Brown, assigned to him all his right, title, &c., in Gossin's mortgage, by an entry on the margin of the record. No consideration is expressed.

"Sept. 30, 1845, Harding endorsed an assignment to Brown upon said mortgage, in consideration of the full amount paid in cash.

"A scire facias was issued in the name of Harding, for the use of Brown v. Gossin, No. 379, Nov. Term, 1845. Nov. 5, 1845, judgment for want of appearance. Same day judgment liquidated at $7,636.92. Levari facias, No. 234, Nov. Term, 1845. Al. levari facias, No. 22, Jan. 1846. Return sold to James Brown for $170. Proceeds applied to the judgment.

"At the date of Gossin's mortgage to Harding, the latter had no actual notice of Gossin's conveyances to Denny, but was apprised of it by Denny before Gossin's note became due.

"Brown, prior to the date of his mortgage to Harding, 3d July, 1843, had notice from Gossin of the object of the deed of 14th September, 1841, from Gossin to Denny; and became fully aware of the defeasible character of said deed.

"Upon the facts here stated, the counsel of Denny requested the

court to charge, First, That from the smallness of the consideration ($170) paid by Brown to the sheriff, the jury might lawfully presume he bought subject to Denny's prior title. Second, That the deed of Gossin to Denny, although originally defeasible, had become absolute by the payment of $4,728.88 on the 1st February, 1844. Third, That the mortgage of Gossin to Harding was satisfied and extinguished by payment thereof, the 5th July, 1845, and that the assignments to Brown in September following, were mere nullities. Fourth, That if not a nullity, it was inoperative as against Denny, inasmuch as Brown had notice of Gossin's mortgage to him, long prior to the payment of the mortgage to Harding. Fifth, That Brown was not entitled, under the circumstances, to be subrogated to the original rights of Harding, as they existed prior to the payment of the debt of Gossin to Harding, because the debt secured by the mortgage was paid without any demand of or reference to an assignment of the mortgage: because the assignment of the mortgage alone, two months after the debt was paid, was a nullity, and if not so, Brown had notice of Denny's title before paying his money: because a portion of the loan to Gossin went into Brown's hands, and by the assignment of 8th February, 1843, Brown took notes, &c., from Gossin, more than sufficient to cover his debt, which he still retains, and is entitled to the proceeds of."

The court (HEPBURN, President) answered these points in the negative, and directed the jury to return a verdict for the plaintiff.

*Forward*, for the plaintiff in error.—Gossin's mortgage to Harding was discharged and extinguished prior to the assignment of it to Brown. That assignment was a nullity, and Brown was excluded from subrogation.

1. It was discharged by the judgment of Harding of 8th February, 1843, and by Brown's mortgage to Harding of 3d July, 1843. The original debt of Gossin to Brown, and of his mortgage to Harding, were extinguished, unless a contrary intent is proved. But if this is not so, still Gossin's mortgage was satisfied three months before its assignment to Brown: Lothrop & Dale's Appeal, 1 Barr, 515; 4 Kent, 196, 6th ed.; Kuhn v. North, 10 S. & R. 399.

2. It is said that equity, however, would keep this mortgage alive for the benefit of the surety: Fink v. Mehaffy, 8 W. 384; Rittenhouse v. Levering, 6 W. & S. 198. Leaving the mortgagee at liberty to enter satisfaction was an implied waiver of the claim now set up: Bank v. Germon, 3 Barr, 300. The debt, and the evidences of it, were not assigned to Brown. The assignment of the mort-

gage was a mere nullity: Craft *v.* Webster, 4 R. 258; 4 Kent, 194, notes, *b, c.*

The assignment of the notes, &c., by Gossin to Brown, which are still in his hands, repels his equity to take this land from Denny, who was also a surety and paid full value for the property: Bank *v.* Germon. Subrogation is not allowed to the prejudice of intervening rights: Cases before cited as to general doctrine of subrogation, and Eberhardt's Appeal, 8 W. & S. 327.

*Williams* and *Kuhn,* contrà.—If it were not conceded that the conveyances to Denny were to be treated as unrecorded mortgages, and so postponed to the mortgage to Harding, there is abundant authority to be found in the books to sustain that position: Stoever *v.* Stoever, 9 S. & R. 434; and also to show they were void as such against a judgment-creditor or purchaser: Freedly *v.* Hamilton, 17 S. & R. 70; Jacques *v.* Weeks, 7 W. 261; Bank *v.* Bank, 7 W. & S. 336.

But it is said one mortgage was extinguished by the judgment and mortgage of Brown to Harding, unless a contrary intent be proved. That intent is proved by Harding, who took the mortgage to secure Brown against any loss by his endorsement for Gossin.

Payment by the endorser does not extinguish the instrument of indebtedness; on the contrary, equity keeps it alive for his benefit: Ebb's Appeal, 2 P. R. 296; Fleming *v.* Beaver, 2 R. 128; Craft *v.* Moore; Potts *v.* Nathans, 1 W. & S. 155; Bank *v.* Potius, 10 W. 148; Lothrop's Appeal. A surety paying has a right to a mortgage given as collateral, and it is not extinguished unless paid by the principal debtor: Kinley *v.* Hill, 4 W. & S. 426.

Subrogation strictly only applies where the debt is extinguished *at law.* There was no legal satisfaction here. One paying the debt of another, with intent to satisfy it, extinguishes it. That intent must appear. Against a surety no such intent can be presumed.

As to implied waiver, if the mortgagee had entered satisfaction, it would have been a fraud on us—and a mere nullity.

The assignment of the mortgage carries the debt along with it, if such was the intent of parties.

The opinion of this court was delivered by

BELL, J.—It is conceded that the conveyances from Gossin to Denny being modified by unrecorded defeasances, are to be regarded as unrecorded mortgages, and, therefore, subject to be postponed to the subsequent mortgage executed to Harding. This leaves,

as the only question in the cause for decision, whether Brown, the plaintiff below, is entitled to the benefit of the latter security by way of substitution? This question, we think, under the principles settled by repeated decisions in Pennsylvania, admits of but one answer, almost to be deduced from a simple statement of the facts.

On the 5th of February, 1842, Gossin borrowed from Harding a sum of money for which he gave his note, with Brown as endorser, and, at the same time, executed to Harding a mortgage as collateral security. Harding testifies this mortgage was intended to secure Brown against any loss from his endorsement, he, as lender, being satisfied with the security afforded by Brown's name. Gossin's note was not taken up at maturity, and an extension of the time was granted to Brown as endorser, on condition of his, Brown's, confessing a judgment in favour of Harding. This was accordingly done on the 8th of February, 1843. This judgment was marked satisfied in July 1843, at which time Brown substituted for it a mortgage of a portion of his property to Harding, as a further security of the original loan to Gossin. On the same day that Brown confessed judgment in favour of Harding, Gossin assigned certain *choses in action* to Brown, of a nominal value exceeding the debt due to Harding as collateral security against loss. Though an effort was made to effect it, nothing was realized from these *choses*, which are agreed to be worthless. On the 5th of July, 1845, Brown paid the amount secured by his mortgage to Harding, and thus discharged the original debt due from Gossin, for which, as endorser, he was surety. On the 23d of September, 1845, Harding, at the instance of Brown, assigned to him Gossin's mortgage, by an entry on the margin of the record. Brown had no notice of the conveyances to Denny when he endorsed Gossin's note to Harding, but was informed of them prior to the date of his mortgage of July 1843.

We have, in these facts, the naked case of a surety who paid the debt of his principal, and claims to be subrogated to the use of a mortgage which was, in fact, executed to indemnify him against loss. And why should he not be so subrogated? Apart from the fact that the mortgage was given principally for his security, and may thus be regarded as equitably belonging to him from the beginning; the equity he challenges is among the most familiar of those recognised by courts of chancery, and with us of almost daily administration. That a surety who pays the debt of his principal is entitled to the benefit of all the securities within the power of the creditor, is a doctrine acknowledged in this

state, unembarrassed by the difficulties and dispositions that else-where have obtained, in respect to such securities as might be esteemed as discharged at law. Following the older decisions of the English Chancery, we have ever held that, though there be but one security of the debt paid by a surety, equity will preserve its vitality for the benefit of such surety, for, as is said in Craft v. Moore, 9 W. 451, where this branch of our legal system is ably reviewed, "what is very payment at law may not be payment at all in equity." We have gone even further than this, by asserting a similar equity in favour of a co-surety in a joint judgment of one of several purchasers of land, encumbered by a joint judgment, afterwards paid by that one; and for the protection of a mortgagor who aliened the mortgaged premises with covenant that the alienee should assume the encumbrance: Fleming v. Beaver, 2 R. 128; Potts v. Nathans; Bank of Pennsylvania v. Potius; Lothrop's Appeal; Duncan v. Drury, 9 Barr, 332; Champlin v. Williams, Ib. 341; Morris v. Oakford, Ib. 498. But the question of a security extinguished by payment, can scarcely be said to be presented here. The security actually discharged was Gossin's note to Harding, or, at most, Brown's mortgage to the latter. There was no formal discharge of Gossin's mortgage, and therefore, even in England, it could not be considered as discharged, or, in the language of Lord Eldon, got back to the principal debtor. There is, in fact, no pre-tence for saying that it was actually paid, either by Gossin or Brown. The judgment confessed by the latter, and the mortgage afterwards executed by him, were, strictly speaking, to secure payment of his endorsement; and the subsequent payment of the mortgage was but in discharge of his original liability. Gossin's mortgage therefore remained intact for every equitable purpose, and would be every-where so esteemed. But, I repeat, had it been the only evidence of the debt incurred by Gossin and Brown, payment by the latter of the sum due, would not have extinguished the security to the detriment of the surety. It is true that payment by a surety, with intent to discharge the security, may operate to extinguish it in equity as well as at law; yet such an intent is not to be pre-sumed without proof of its existence. It is difficult in any case to conceive the object of a surety to be extinguishment, in detriment of his own interests; and therefore payment by him is *primâ facie* to be accepted as intended for personal relief, leaving his remedies untouched. To this effect are all our authorities; and from them has been deduced the general rule that where there are no special circumstances manifesting a determination to obliterate the original

obligation, and to destroy the securities taken for its payment, equity will regard the duty as still existing at the option of the surety: Croft v. Moore; Morris v. Oakford, *suprà*. Now what has Brown done or omitted to do, which, as sufficient evidence of intent, can operate to withdraw his pretensions from the influence of this rule? Certainly such an effect is not to be imputed to his acceptance of the *choses in action*, transferred by Gossin as collaterals. This can scarcely be pretended. In accepting additional means of safety, it is not to be supposed he intended to extinguish those he already possessed. Nor is such a result to be ascribable to his omission to ask an assignment of the mortgage immediately on payment of the debt. Actual assignment was altogether unnecessary. The power to use the mortgage as a means of reimbursement was conferred by his unassisted right of subrogation, and it would, therefore, be strange indeed to ascribe an effect, destructive of this right, to a mere negligence to exact the performance of an unessential ceremony: Kinley v. Hill, 4 W. & S. 426. This omission did not put it in the power of the mortgagee to compromise the right of the surety by the entry of satisfaction on the record of the mortgage, as seems to be thought by the counsel of the plaintiff in error. Such an attempt would be regarded as fraudulent and wholly inoperative as against the surety, for whom, after payment, the mortgagee is considered as a trustee: Roberts v. Halstead, 9 Barr, 32. If further answer to this objection be required, it is found in the fact that, within a reasonable time, a request preferred to the mortgagee was followed by a formal transfer of the mortgage; a step in itself sufficient to dissipate every lingering doubt as to the intention of the party principally interested.

The fact that Brown, before the execution of his mortgage to Harding, had notice of the conveyance to Denny, cannot, of itself, operate to alter the relative rights of the parties. Before this, Brown had incurred the liability he was ultimately obliged to discharge; and this, too, on the faith of Gossin's mortgage to Harding.

Judgment affirmed.