## Watson's Appeal.

P. and W. owned certain property, as tenants in common. They jointly executed a mortgage thereon to N. to secure the payment of eleven bonds of $2000 and one of $4000. N. assigned nine of the $2000 bonds to C. and guarantied their payment. About the same time N. borrowed money of D. and gave the $4000 bond as collateral security. N. failed to pay D. and the latter transferred the $4000 bond to E. After the obligors had paid and taken up two of the $2000 bonds, W. conveyed his undivided one-half of the property to N. The deed contained a covenant of N., by which he agreed to assume and pay the balance due on said mortgage and to save harmless W., his heirs, executors and administrators, from the payment of the same or any part thereof. Afterwards N. procured a re-assignment of the seven bonds from C. and transferred them to other parties. *Held*, that by the conveyance by W. of his interest in the land to N., the latter became a tenant in common with P., and when N. paid and took up the bonds secured by the mortgage, which he and P. were jointly obligated to pay, he thereby acquired the right to collect one-half thereof out of the estate of P., and was entitled to all the securities and all the remedies given by the mortgage, and that by the assignments of the bonds these remedies passed to his assignees.

June 2d 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    WOODWARD, J., absent.

Appeal from the Court of Common Pleas of *Lycoming county*: Of May Term 1879, No. 210.

Appeal of Oliver Watson and Oliver Watson, Jr., in right of his wife, formerly Ella R. Potter, from the decree of the court making distribution of the proceeds of the sheriff's sale of the real estate of Joseph H. Wonderly and of Ozias Potter, deceased, in the hands of Albert T. Nichols, his administrator.

John B. Hall, being the owner in fee of certain real estate known as the "Foundry Property," in the city of Williamsport, in 1864, entered into articles of agreement to sell the same to Albert T. Nichols. Nichols in 1866 sold the same to Ozias Potter and Joseph H. Wonderly, there being at the time a balance of $16,000 due Hall from Nichols on the aforesaid agreement. On the 31st of October 1866, Hall executed and delivered to Potter and Wonderly direct a deed of the premises, and the same day Potter and Wonderly gave to Hall bonds for the $16,000 due him from Nichols, and a mortgage on the premises to secure the same; and to Nichols, the same day, bonds for the sum of $24,000, and a mortgage on the same premises to secure the same. The deed and two mortgages were filed for record on the day of their execution.

[Watson's Appeal.]

The bonds to Hall were all paid by the obligors, except one of $4000, which was assigned by Hall to E. L. Piper, and by Piper to Mrs. Catherine J. Packer. Three of the bonds given to Nichols, amounting to $6000, were paid by the obligors. Of these, one bond of $4000 had been assigned by Nichols to Robert Porter, in 1867, as collateral security for a loan of $5500, for which Nichols had given his note, with endorsers, and which note, with the interest thereon, remains unpaid, and said bond was assigned by Porter to Oliver Watson, on the 9th day of May 1878. The remaining seven bonds of $2000 each were assigned by Nichols to E. L. Piper, December 9th 1867, and re-assigned by Piper to Nichols, in 1874 and 1875; and subsequently thereto, to wit, on the 29th of May 1875, two of said bonds were assigned by Nichols to the City National Bank of Williamsport, as collateral security for a loan to said Nichols upon his note, with endorsers, which note remains unpaid; and five of said bonds were assigned by said Nichols to William H. Armstrong, and by him to the York County National Bank as collateral security, for a loan of $10,000 obtained by Nichols on his notes, endorsed by said Armstrong and others, and which note remains unpaid and the endorsers never released. The bonds were assigned to Armstrong to obtain his endorsement of Nichols's notes, and assigned by Armstrong to the York County National Bank after failure of Nichols to pay his notes.

On September 6th 1869, Ozias Potter, one of the obligors in the said bonds and mortgages, and owner of the undivided one-half of the property described in the aforesaid deed and mortgages, died, leaving to survive him a widow and an adopted daughter, Ella R., since intermarried with Oliver Watson, Jr., having made a will which was declared invalid, on issue thereon, and on the 8th of October 1870, letters of administration *de bonis non* were granted to the aforesaid A. T. Nichols.

On the 11th January 1871, Joseph H. Wonderly, the other obligor in said bonds and mortgages, and owner of the other half part of the said premises with his wife, by their deed dated January 10th 1871, conveyed to said Nichols the one undivided half part thereof. This conveyance was expressly made subject to the payment by Nichols of the balance of the debt and interest due upon both of the aforesaid mortgages, and the fact that part or all of the bonds thereby secured had been assigned to third parties was distinctly recognised. This deed also contained a covenant by Nichols " to assume and pay the balance of the debt and interest owing upon said two mortgages and bonds secured thereby, and to save harmless the said Wonderly from any liability for the same;" and it was moreover expressed that the performance of said covenant and by said Nichols was a part of the consideration of said deed, and the deed was executed by Nichols as well as the grantors. Mrs. Catherine J. Packer issued a scire facias upon the Hall mort-

[Watson's Appeal.]

gage, obtained a judgment, and issued a levari facias to May Term 1878, and then assigned the judgment to Oliver Watson. The sheriff sold the property to Oliver Watson for $9800, for which sum he returned he had taken the receipt of Oliver Watson under the Lien Creditor Act, Mr. Watson claiming that the fund should be appropriated first to the payment of the Hall mortgage, balance in full of debt and interest $5016.57, and the remainder should be applied to the bond which had been assigned by Nichols to Porter and by Porter to him, the said Watson, and so the auditor reported. To this report exceptions were filed on the 31st of December 1878, by the City National Bank and the York County National Bank, and the case referred back to the auditor to make a new distribution on the principles indicated in the opinion of the court, to wit, that Nichols, by virtue of his succession to Wonderly's half interest in the property, and having paid off the mortgage, was entitled to subrogation as against Potter, but confirming the distribution so far as applied to the Hall mortgage. The auditor made a second report, distributing the $4500 *pro rata*, upon the whole of the Porter bond and the one-half of the amount of the bonds held by said banks. To this report Oliver Watson and Oliver Watson, Jr. filed exceptions on the 18th of April 1879, alleging as error that the auditor erred in not distributing the whole balance of $4475 to the Porter bond; that the distribution was not in accordance with the law and the facts, and that there was error in the court in refusing to confirm the first report and in referring the same back to the auditor.

On May 9th 1879, the final decree of the court was filed, decreeing a distribution different from that made by the auditor, but not as claimed by Oliver Watson, overruling the exceptions, except to the extent that the distribution made by the auditor was changed by the opinion as filed by the court, and confirming the report of the auditor absolutely. By this decree the $4475 are distributed as follows :

One-half thereof to the Porter bond held by Watson, $2237.50
And of the remaining one-half, to wit, $2237.50, to
   Oliver Watson on the Porter bond,   -   -   -   280.46

                                         $2517.96
To the bond held by City National Bank,   -  -   579.47
To the bond held by York County National Bank,   -  1377.57

                                         $4475.00

From which final decree Oliver Watson and Oliver Watson, Jr., took this appeal.

*Clinton Lloyd* and *H. W. Watson,* for the Watsons.—Potter

and Wonderly were joint obligors in the bonds to Nichols. Either might pay, and was in duty bound to pay, without consultation with the other. We contend that Wonderly paid the whole of the mortgage-debt, not the half thereof as the court intimated in their opinion, by the sale of his undivided interest in the property to Nichols. The satisfaction of the mortgage and cancellation of the bonds were a part of the consideration of Nichols's purchase, and as was said by THOMPSON, C. J., in Abbott *v.* Kasson, 22 P. F. Smith 183 : " It would be a novelty for a purchaser of land to keep on foot his own mortgage against his own estate." Granted that Potter was not a party to the transaction, still surely in a sci. fa. by Nichols, if he continued to hold the bond, Potter could make defence that the mortgage had been paid in full by Wonderly in any way. · Nichols would be estopped from recovery on the mortgage by the covenant in the deed from Wonderly, by which he agreed, as part of the consideration, to satisfy the mortgage and cancel the bonds, and his assignees can stand in this respect in no better position than himself, even if the deed from Wonderly to Nichols, recorded years before they came into possession of the bonds, was no notice to them.

*A. J. Dietrick,* for the City National Bank of Williamsport.— We are still disposed to adhere to the views and position taken before the auditor, that the Hall mortgage and the Nichols mortgage, having been executed and recorded on the same day, and there being no recital in the Hall mortgage that it was for purchase-money, therefore not differing from the Nichols mortgage, that there was nothing on the record of which purchasers of the bonds were bound to take notice; that, therefore, the mortgages, as to such purchasers, stand upon the same basis, and that, consequently, the City National Bank is entitled to share equally in the distribution of the proceeds realized from the sheriff's sale of the premises upon which they were liens.

*Armstrong & Linn,* for the York County National Bank.—A judgment paid may be kept alive in equity when justice requires it to be done: Fleming *v.* Beaver, 2 Rawle 128. A mortgagee, who purchases the land bound by the mortgage, will be allowed to use the mortgage for his protection against prior liens: Moore *v.* Harrisburg Bank, 8 Watts 138. The assignment of the bond to Porter, and by him to Watson, gives this bond no preference over other bonds covered by the same mortgage. All must be paid *pro rata:* Donley *v.* Hays, 17 S. & R. 400. The estate of Potter must bear its proportion of the joint encumbrance, and the right of Nichols to contribution inures to the benefit of the bondholders: Gearhart *v.* Jordan, 1 Jones 325.

[Watson's Appeal.]

Mr. Justice MERCUR delivered the opinion of the court, October 6th 1879.

This fund, in contention, is the proceeds of a sale of lands formerly owned by Ozias Potter and Joseph H. Wonderly, as tenants in common. While thus owning the land, in November 1866, they jointly executed a mortgage thereon to Albert T. Nichols, to secure the payment of eleven bonds, ten of $2000 each, and one of $4000. In December of the next year, Nichols assigned nine of the $2000 bonds to one Piper, and guaranteed their payment. About the same time, Nichols borrowed money of one Porter, and gave him the $4000 bond as collateral security. Nichols failed to pay Porter, and the latter transferred the bond to one of the appellants. After the obligors had paid and taken up two of the $2000 bonds, in January 1871, Wonderly conveyed his undivided one-half of the property to Nichols. The deed contained a covenant of Nichols, by which he agreed to assume and pay the balance owing on said mortgage, and to save harmless, said Wonderly, his heirs, executors and administrators from the payment of the same or any part thereof. After this, Nichols procured a re-assignment of the seven bonds from Piper, and the appellees acquired and hold them under later transfers from Nichols. The present contention is between the appellees on the one side, who hold the bonds thus taken up and negotiated again by Nichols; and the appellants on the other side, who hold the $4000 bond not taken up. The appellants contend that the bonds re-assigned to Nichols, were, thereby, by operation of law, paid and satisfied.

As between two mortgagors of land held by them as tenants in common, and third persons, each mortgagor is liable for the whole sum secured by the mortgage; but, as between themselves, each is liable for one-half only. As to the other half, each is surety for the other: Gearhart *v.* Jordan, 1 Jones 325. As no partnership existed between the mortgagors, none of the incidents applicable to copartners can be invoked. The rule which denies subrogation in case of a debt arising in a partnership transaction before settlement of the partnership accounts, does not apply. On the conveyance by Wonderly of his interest in the land to Nichols, the latter became a tenant in common with Potter. Thenceforth they sustained the same relation in regard to the payment of the mortgage, as Wonderly and Potter had previously sustained. No consideration passed from Potter. He was a stranger to the contract between Wonderly and Nichols. His rights were unaffected thereby. They were neither enlarged nor diminished. The covenant of Nichols obligated him to protect Wonderly from all liability on the mortgage and bonds; but not to protect or relieve Potter therefrom. It follows, when Nichols paid and took up the bonds, secured by the mortgage, which he and Potter were jointly obligated

[Watson's Appeal.]

to pay, he thereby acquired a right to collect the one-half thereof out of the estate of Potter. He was not driven to an action to enforce this right; but was entitled to all the securities and all the remedies given by the mortgage : Wright *v.* Grover & Baker, 1 Norris 80. By virtue of subsequent assignments, all these rights and remedies passed to the appellees, and they are justly entitled to the sum decreed to them.

> Decree affirmed, and appeal dismissed at the costs of the appellant.