# THE SUPREME COURT

OF

# PENNSYLVANIA.

| 106          1|
| 31 SC ²613|

## EASTERN DISTRICT—PHILADELPHIA, 1884.

## Ackerman's Appeal.

1. If an incompetent witness is allowed to testify without objection before an auditor, objection cannot afterwards be made to the admission and consideration of his testimony.

2. Joint debtors as between themselves and their creditors are each liable for the whole debt, but as between themselves each is liable only for his proportion thereof, and, as to the rest, each is surety for the others.

3. Where one of two debtors in a joint judgment note is compelled to pay the entire amount thereof, he is entitled to be subrogated to the creditor's rights against the estate of his deceased co-obligor, as to the latter's proportion of the debt.

March 13, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Northampton county:* Of January Term, 1884, No. 361.

Appeal of David H. Ackerman, from a decree of the Orphans' Court of Northampton county, making distribution of the proceeds of certain real estate of William F. Moser, deceased, sold by the administratrix of his estate for the payment of debts.

The administratrix having filed her account, it was referred to S. B. Chase, Esq., as auditor, from whose report the facts pertaining to this appeal appeared to be as follows: David H. Ackerman and the decedent William F. Moser in 1874 purchased jointly as tenants in common a tract of land, containing about nine acres situated in the borough of Bangor, in

10 OUTERBRIDGE.—1.

Northampton county, from John G. Miller, since deceased, for $6,000. The sum of $2,785 was paid to Miller in cash, and a joint judgment note for $3,215 was given for the balance of the purchase money by Ackerman and Moser. This judgment note was entered of record by Miller, and is numbered "216 April T., 1874," and it was revived as "No. 615 February T., 1879," and was the first lien against the property. On April 1, 1876, $2,215 was paid on account, and credited by endorsement on said judgment.

Ackerman testified before the auditor, without objection, that this amount was paid entirely by him out of his individual funds. Miller subsequently died, and one J. J. Utt purchased of his estate the joint judgment against Moser and Ackerman and revived it in 1879 to his own use.

He also held a second judgment against Moser, No. 134 of April Term 1876, for $2,281.

Dr. John Buzzard testified as follows: "I was present and assisted in the transfer of judgment No. 216, April Term, 1874, from the estate of John G. Miller to J. J. Utt, and heard William F. Moser say that the entire balance due on said judgment was for him (Moser) to pay; I also heard Moser say the same the year previous, when D. H. Ackerman paid the balance of his part of said judgment."

Moser died October 28, 1881, and on May 28, 1883, Utt issued execution against Ackerman on the joint judgment against Ackerman and Moser. Ackerman paid the judgment, with interest and costs, amounting to $1,281.85, and it was assigned on the record to Ackerman by Utt.

The fund for distribution was the proceeds of the decedent's interest in the land sold to Ackerman and Moser as tenants in common, and amounted to $2,207.52. Utt claimed that this balance should be awarded to him on account of his judgment, No. 134, of April Term, 1876, for $2,281, on the ground that the payment on execution by Ackerman was an extinguishment of the lien, it being the payment of a joint obligation by a co-obligor.

The auditor, referring to Douglass' Appeal, 12 Wright, 223, and the Act of February 24, 1834, § 25 (P. L. 77, Purd. Dig., 422, pl. 89), awarded to Ackerman the sum of $1,239.36, being $1,000, the balance of the joint judgment paid by him upon the execution issued against him by Utt, with costs and interest from April 1, 1879, to the day of sale, September 6, 1882.

To this report Utt filed exceptions on the ground that the auditor erred in subrogating Ackerman to the rights of Utt upon the judgment No. 216, of April Term, 1874, and in basing this right of distribution upon the testimony of Ack-

erman above, he being an incompetent witness in his own
behalf.

The Court, SCHUYLER, J., dismissed these exceptions in the
following opinion: "The judgment which is the subject of the
present controversy being against the decedent and David H.
Ackerman, jointly, the presumption is, in the absence of evi-
dence to the contrary, that the defendants were both principal
debtors: Indiana County Bank's Appeal, 14 Norris, 502.    An
attempt was made to prove that Ackerman was surety for the
decedent, but it was not successful.    The only evidence on
this subject was the testimony of Mr. Ackerman himself, who
was clearly incompetent as a witness, and of Dr. Buzzard,
whose testimony is too vague to be of any value.    Assuming
then that both defendants were principal debtors, the single
question is, whether Mr. Ackerman who paid off the judgment
in full is entitled to subrogation.

"In McCormick v. Irwin, 11 Casey, 111, STRONG, J., in
speaking of subrogation says 'that the doctrine does not
depend upon privity, nor is it confined to cases of strict sure-
tyship,' and in Cottrell's Appeal, 11 Harris, 295, and Mosier's
Appeal, 6 P. F. S., 81, the rule is laid down so broadly that at
first it seemed to me that Mr. Ackerman was within it at least
to the extent of one half of the money paid by him since the
entry of Mr. Utt's judgments.    Subsequent reflection how-
ever, has led me to a different conclusion.    In Mehaffy v. Share,
2 P. & W., 361, it is stated, although that was not the point
decided, that where one of several principals pays a judgment
he is not entitled to be subrogated, and so I find the rule to be
laid down in Bispham's Equity, § 314, and in Leading Cases
in Equity, Vol. 1, Part 1, p. 147.    In the absence of any
express authority the other way, although I can see no good
reason why the law should be in this state, I think it safe to
accept the foregoing as a correct statement of it."

The following decree was entered: "And now, February
4, 1884, the exceptions are sustained, and the balance of the
proceeds of the real estate, to wit: the sum of $2,207.52, is
awarded to Jacob J. Utt, upon his judgment No. 134, April
Term, 1876."

From which decree Ackerman took this appeal, assigning
for error the action of the court in disregarding the testimony
of Ackerman and Buzzard, and in not awarding to Ackerman
the sum of $1,239.69 as reported by the auditor.

*G. W. Mackey* and *Reeder & Reeder*, for appellant.—It
clearly appeared from the testimony that Moser owed the bal-
ance due on the judgment which Ackerman was forced to
pay.    The latter was consequently entitled to be subrogated

to the rights of the plaintiff in the execution. The doctrine of subrogation is not confined to cases of strict suretyship. It is a mode which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and relieve him whom none but the creditors could ask to pay: Bender *v.* George, 11 Norris, 36; Watson's Appeal, 9 Norris, 426; Wright *v.* Grover, 1 Norris, 80; Cottrell's Appeal, 11 Harris, 294; Mosier's Appeal, 6 P. F. S., 76. Co-obligors as between themselves are only liable to contribute, pro rata, their proportion towards the discharge of the common obligation—beyond this each is simply a surety for the others: Gearhart *v.* Jordan, 1 Jones, 325; Champlin *v.* Williams, 9 Barr., 541; Sargent *v.* McFarland, 8 Pick., 500.

*Henry W. Scott,* for the appellee.—Ackerman was not a competent witness in his own behalf, and his testimony was properly rejected by the court: Miller on Witnesses, 107; Hanna *v.* Wray, 27 P. F. S., 27; Ash *v.* Guie, 1 Out., 493. Subrogation is the right which a surety has against his principal, to use a judgment, after the former has either voluntarily, by contract, or by process, paid the debt of the latter, and equity sometimes, also, gives him the remedy to use the judgment to enforce contribution from his co-sureties. But no such right exists between two principal debtors: Mehaffy *v.* Share, 2 P. & W., 361; Greiner's Est., 2 Watts, 414. It will not be allowed either to the prejudice of other creditors, even in case of a surety: Goswiler's Est., 3 P. & W., 200; Douglass' Appeal, 12 Wr., 223; Indiana County Bank's Appeal, 14 Norris, 500.

Contribution is entirely different. It is the right which one joint debtor paying the whole debt has to recover from the other his share of the debt paid. It is founded upon an assumpsit, and no right of action exists until the debt is paid. Here it was not paid until after death of decedent. "The reason why subrogation is not allowed to one partner as against his co-partner, or to one merely a joint debtor as against his co-debtor, is because that as between them there is no obligation to pay the debt resting upon one superior to that which rests upon the other." Per STRONG, J., 11 Cas., 117.

Mr. Justice PAXSON delivered the opinion of the court April 14, 1884.

The single question here is whether the appellant is entitled to subrogation on the judgment No. 216, April T., 1874. This judgment was given by appellant and W. F. Moser, the decedent, for a portion of unpaid purchase money for certain real

estate purchased by the obligors jointly, and for which each was to pay one half. The balance due on this judgment at the time of the audit, was $1000 with interest from April 1, 1879. The balance the appellant, Ackerman, had been compelled to pay upon an execution issued against him. He took an assignment from Utt, the holder of the balance due on the judgment, and now claims to be subrogated to the rights of the plaintiff, and to be paid out of the proceeds of the real estate of his co-debtors upon which real estate the said judgment was a first lien at the time of the sale.

The learned judge refused the subrogation upon the ground that Ackerman and Moser were both principal debtors. This was so as between them and the plaintiff in the judgment. But as between themselves, Ackerman was surety for Moser, and paid his share of the joint liability. This clearly appears from the testimony of Ackerman and Dr. Buzzard. It is true the court says of Ackerman's testimony, that he was an incompetent witness, and that Buzzard's testimony was "too vague to be of any value." But Ackerman was examined not only without objection, but with the consent of appellee's counsel, and in our view Dr. Buzzard's testimony is as explicit as language can make it. He said: "I was present and assisted in the transfer of judgment No. 216, April T., 1874, from the estate of John G. Miller to J. J. Utt, and heard William F. Moser say that the entire balance due on said judgment was for him (Moser) to pay; I also heard Moser say the same the year previous, when D. H. Ackerman paid the balance of his part of said judgment."

The learned judge was evidently misled by a dictum in Mehaffy v. Share, 2 P. & W., 361, and felt constrained to adopt the view he did by reason of the absence of authority the other way. In McCormick v. Irwin, 11 Casey, 111, it was said by Justice STRONG: "The doctrine (subrogation) does not depend upon privity, nor is it confined to cases of strict suretyship;" and in Cottrell's Appeal, 11 Harris, 294, by Justice WOODWARD: "Subrogation is founded on principles of equity and benevolence, and may be decreed when no contract or privity of any kind exists between the parties. Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possesses against the debtor." And in Mosier's Appeal, 6 P. F. S., 76, where a junior judgment creditor, believing the land would be sacrificed, after the execution plaintiffs had refused to assign their judgment to him on payment, paid the executions to the sheriff, and satisfaction was entered; no other liens having intervened, he was subrogated to the rights of the execution plaintiffs, and the satisfaction cancelled.

[Ott *v.* Oyer's Executrix.]

While the ruling of these cases is perhaps broad enough to control the present one, we are not obliged to say so, as we have direct authority upon the point. In Gearhart *v.* Jordan, 1 Jones, 325, it was held that "the rule embraces purchasers in common, of an estate bound by a joint lien; as between themselves, the purpart of each is liable to contribute only its proportion of the common burden, and beyond this, is to be regarded simply the surety of the remaining purparts. In this respect they are to be treated as the several estates of joint debtors, one being surety of the other; and if the purpart of one is called upon to pay more than its due proportion, the tenant, or his lien creditors, upon the principle settled in Fleming *v.* Beaver, 2 R., 128; Croft *v.* Moore, 9 Watts, 451, and Neff *v.* Miller, 8 Barr., 347, is entitled to stand in the place of the satisfied creditor, to the extent of the excess which ought to have been paid out of the other shares." Gearhart *v.* Jordan was recognized in the late case of Watson's Appeal, 9 Norris, 426, where it was said by MERCUR, J.: "as between two mortgagors of land held by them as tenants in common, and third persons, each mortgagor is liable for the whole sum secured by the mortgage; but as between themselves each is liable for one half only. As to the other half each is surety for the other."

Such is the case here. As between Ackerman and Moser, Ackerman was security for Moser's share, and having been compelled to pay it, is entitled to the benefit of the judgment to that extent.

> The decree is reversed at the costs of the appellee, and it is ordered that distribution be made as reported by the auditor.