Lit Brothers, Appellant, *v.* Goodman et al.

Argued October 18, 1940.

44

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*D. Benjamin Kresch,* with him *William H. Kresch* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Ivan Michaelson Czap,* with him *Michael H. Egnal* and *Nathan Silverstein,* for appellees.

OPINION BY KELLER, P. J., February 28, 1941:

On May 7, 1926, four promissory notes, each in the amount of $500, were executed by the four defendants in this case. The notes were to the order of Lit Brothers, were not under seal and were payable seven, eight, nine and ten months after date, respectively. On March 10, 1927, all the notes being then due and unpaid, a summons in assumpsit was issued in which Lit Brothers was the plaintiff and Frank Goodman, J. Solomon Kresch, Bernard Goodman and Fred Goldentyer were defendants. The amount claimed was $2000 with interest and costs. On May 20, 1927, a statement of claim was filed—endorsed with notice to file an affidavit of defense—setting out the notes, averring presentation for payment "to the defendants" and their failure to pay the notes or any part thereof. An affidavit of defense, which is not printed in the record, was filed on June 28, 1927. On July 28, 1927, a supplemental affidavit of defense containing New Matter was

filed by the defendant, Bernard Goodman, "on behalf of himself and his co-defendants, and with their consent". The New Matter set out that the plaintiff, by its agent, had orally promised to renew the notes when they fell due, on payment of interest, and that this promise had induced the contract. Further, it averred that this part of the agreement had been left out of the notes by mutual mistake. On February 2, 1928 the plaintiff filed an answer to the New Matter, containing a complete denial of an oral promise, and averring that if one had been made, the agent making it was without authority.

Under the explicit provision of the Practice Act of May 14, 1915, P. L. 483, sec. 2, as amended by the Act of March 30, 1925, P. L. 84, No. 54, sec. 1, the pleadings were then closed and the case was at issue. Nothing was done until September 30, 1933, when, by order of plaintiff's attorney, the action was marked to the use of Y. Priscilla Kaplan. Nothing further was done until January 12, 1938, when, without leave of court, Goldentyer filed a separate affidavit of defense. This separate affidavit of defense did not deny the affiant's liability to the legal plaintiff on the notes. It set up as an affirmative defense that the notes had been paid to Lit Brothers by his three co-defendants—not, it will be noted, by him; following which the plaintiff's statement by agreement was amended by a paragraph averring that on or about September 20, 1933, the said notes were delivered and transferred by the legal plaintiff, Lit Brothers, to the use plaintiff, Y. Priscilla Kaplan, and were thereafter endorsed by legal plaintiff to use plaintiff.

Leave of court to file this separate affidavit of defense should have been obtained (*Dever v. Kathrins & Golen,* 82 Pa. Superior Ct. 140) ; and, as the affidavit raised an entirely new issue and an affirmative defense, the burden of proving it was on the defendant Goldentyer, and by analogy to the entry of non pros. for delay

in prosecuting an action, (*Potter Title & Trust Co. v. Frank,* 298 Pa. 137, 139, 148 A. 50; *Waring Bros. & Co. v. Penna. R. Co.,* 176 Pa. 172, 176, 35 A. 106; *Ulakovic v. Metropolitan Life Ins. Co.,* 339 Pa. 571, 16 A. 2d 41), the court below would not have abused its discretion if it had refused to allow it to be filed ten years after the bringing of the action and over four years after the alleged payment (*Dever v. Kathrins & Golen,* supra).

But since (1) the use plaintiff has not complained of it, (2) her counsel has entered into a stipulation (12a) providing for treating the statement of claim as amended to show the transfer of the notes to her and (3) the separate affidavit of defense was filed about 17 months before the trial, it can be considered.

Goldentyer's affidavit of defense admitted execution of the notes but averred, in additional paragraphs, not headed 'New Matter' that his three co-defendants had paid Lit Brothers' claim in full, under an oral agreement. The agreement was in fact a written one and is set out in the record at pages 41a-46a.

Going to trial, as they did, without an answer to what was undoubtedly New Matter in the separate affidavit of defense (*Security T. & T. Co. v. Welsh & Brown,* 104 Pa. Superior Ct. 502, 505, 159 A. 227) it is no wonder that confusion has resulted. See *Hatfield v. Thomas Iron Co.,* 208 Pa. 478, 487, 57 A. 950. The use-plaintiff's theory was that the transaction resulting in the transfer of the notes to her and the marking of this suit to her use was a *purchase* of the notes by the three co-defendants with no intention to cancel them, and that therefore they are entitled to *contribution* against Goldentyer. Goldentyer's theory was that since Lit Brothers had been paid by his co-defendants the notes were discharged and his co-defendants had no right of *subrogation* to its rights; and that any right of *contribution* they might have against him must be enforced in a new action. At the trial before Judge GLASS,

sitting without a jury, it was developed that the three co-defendants had paid Lit Brothers, under their agreement; that the use-plaintiff is their nominee (28a) and that the notes were transferred and the suit marked to her use about the time of the last payment.

The trial judge found for defendants, refused use-plaintiff's motions for judgment n. o. v. and for a new trial and entered judgment for defendants. His grounds were (1) the legal plaintiff has been paid in full; (2) the use-plaintiff (as nominee of the three paying defendants) already has judgments against Goldentyer in the two other suits mentioned in the agreement, totalling more than one-fourth of the original debt and (3) one-fourth is the extreme limit of Goldentyer's liability. This appeal followed.

At the outset, it is necessary to point out the distinction between *subrogation* and *contribution*. Subrogation is the putting of one person in a position to exercise the rights and remedies formerly enjoyed by another and no longer of any use to that other. Contribution is the right enjoyed by a person who is jointly liable with others and has paid more than his proper share in discharge of the joint liability, to force them to reimburse him to the extent of their liability. In *Wright v. Grover & Baker S. M. Co.*, 82 Pa. 80 81, it was put thus: "This case involves a consideration of two questions. One, the rights of a surety, who has paid the debt, against his co-surety; [i. e. contribution] the other, the manner in which he may enforce them [held to include subrogation]". The difference is also made clear in *Goldman v. Mitchell-Fletcher Co.*, 292 Pa. 354, 141 A. 231, in which the court said that the only question raised was whether subrogation had been properly allowed. After deciding that it was, however, the court then discussed "the use which the Surety Company may make of the judgments against both defendants," and decided that it was a proper case for contribution.

It is important to note that the use-plaintiff, in this case, is seeking a judgment against all *four* defendants, although admittedly, that is only the initial step in the effort later to secure contribution from Goldentyer. It is clear, then, that the question of contribution does not here arise, but only the question of subrogation, and the further question whether the right to subrogation includes the right to continue this suit to judgment. There is nothing in the pleadings and nothing in the testimony at the trial throwing any light on the extent of Goldentyer's eventual liability. All persons whose names appear on a note as makers are primarily and unconditionally liable to the payee (10 C. J. S., Bills and Notes, sec. 37(a) p. 458) and each is therefore liable for the whole debt. As between themselves, however, their rights and liabilities depend on the relation they sustain to each other and to the transaction: 10 C. J. S., Bills and Notes, sec. 37(f) p. 465. It is frequently said that each joint debtor is surety for the other as to the amount beyond his agreed liability: *Ackerman's Appeal,* 106 Pa. 1, 5; *Miller's Appeal,* 119 Pa. 620, 630, 631, 13 A. 504; *Slaymaker v. Gundacker's Exrs.,* 10 S. & R. 75, 81, 82; *Watson's Appeal,* 90 Pa. 426, 430. It is clear, then, that Goldentyer is presumptively liable over to his co-defendants who paid the payee, the legal plaintiff, and therefore, that their nominee, the use-plaintiff, is presumptively entitled to subrogation. See *Reimel v. Northwestern Trust Company,* 304 Pa. 121, 127, 155 A. 106.

There can be no doubt that the money paid by the three defendants, under the agreement with Lit Brothers, was a purchase of the notes and not payment with intent to discharge. This is clear from the agreement and even if it were not, the intent to keep the obligation alive would be presumed: *Croft v. Moore,* 9 Watts 451, 454, 455; *Gossin v. Brown,* 11 Pa. 527, 532, 533; *Morris v. Oakford,* 9 Pa. 498. Nor is a formal assignment necessary to protect the one who pays:

*Lloyd v. Barr,* 11 Pa. 41, 48; *Gossin v. Brown,* 11 Pa. 527, 533. Even the creditor cannot prevent subrogation to his rights of the one who pays: *Springer's Admrs. v. Springer,* 43 Pa. 518; *Com. v. Froelich,* 56 Pa. Superior Ct. 604.

Goldentyer does not dispute the general rule that the paying surety is entitled to subrogation to all the remedies and securities of the paid creditor against those benefited by his payment, as stated in *Commonwealth v. Froelich,* 56 Pa. Superior Ct. 604, 609. He agrees that if this suit had been prosecuted to judgment by Lit Brothers before it was paid, his co-defendants who paid, would be subrogated, but he contends and the lower court decided that they cannot be here, because the suit had not been thus prosecuted to judgment.

The paying surety is favored in our law and his right to subrogation is by no means limited to judgments. A case, almost on all fours with the present case, is *Wright v. Grover & Baker S. M. Co.,* 82 Pa. 80. There three judgment notes with three joint makers, two of whom were admittedly sureties, were involved. One of the notes had been entirely paid by one of the sureties, the word 'paid' had been written across it twice. Of the others, he had paid the balance left unpaid by the principal debtor. The notes were then lifted by the principal debtor and judgment confessed on them by him *against all three makers, for their full amount,* using the name of the payee as legal plaintiff and that of the paying surety as use-plaintiff. The paying surety then *issued execution* against his co-surety for half of the total amount he had had to pay and this was held proper on appeal. The court said (p. 83):

"It is contended that the original obligation is extinguished, inasmuch as the word 'paid' was written on its face. We answer, it had to be paid to the original creditor before the right of substitution could arise. We have shown that the satisfaction on the record of a

judgment paid by a surety does not extinguish it as to the paying surety. The same reason applies to the note in this case, and prevents its extinguishment to the prejudice of the surety. Hence, we see no error in the learned judge holding that judgment might be entered on the note in the names of the original obligees for the use of the surety who had paid it. The amount to be collected of the co-surety is subject to the equitable power of the court; that power was properly exercised in this case."

See also, as to conclusiveness of payment, *Morris v. Oakford,* supra (receipts for interest paid by surety had been endorsed on bond) ; *Goldman v. Mitchell-Fletcher Co.,* supra (judgment had been satisfied) ; *Reimel v. Northwestern Trust Co.,* supra (one of two joint judgments had been satisfied).

In line with this policy of a broad right to subrogation are cases holding that the right is available in the distribution of funds in control of the court. In *Fleming v. Beaver,* 2 Rawle 128, it was held that the co-surety who had paid a joint judgment was entitled to subrogation in that judgment and that in distribution of the proceeds of his fellow surety's property he should come in before a creditor with a later judgment. In *Ackerman's Appeal,* supra, (106 Pa. 1) one of two purchasers of land who had paid more than his share of a purchase money judgment was held entitled to subrogation as to such overpayment and was awarded it out of the proceeds of sale of his deceased co-purchaser's interest in the land, for the payment of debts. In *Watson's Appeal,* 90 Pa. 426, payment out of the proceeds of a sheriff's sale of land was allowed under a mortgage on which no judgment had been got. The court said (p. 431) : "He [the co-surety] was not driven to an action to enforce this right; but was entitled to all the securities and all the remedies given by the mortgage". In *Boltz's Estate,* 133 Pa. 77, 19 A. 303, sureties on a county treasurer's bond, who had paid

his shortages, were held entitled to share in the distribution of the treasurer's assigned estate, in place of the county which they had paid.

The appellee's only remaining argument is that whatever rights the use-plaintiff might have had to proceed on the notes, the action could not be assigned. In *Canby v. Ridgway*, 1 Binney 496, the claim was assigned after suit was brought. The court, on a showing that the assignee had in fact prosecuted the suit, which defendants won, decreed that it should be marked to his use to make him liable for costs. See also, *Neal to use v. B. R. & P. Ry. Co.*, 103 Pa. Superior Ct. 218, 158 A. 305. In *M'Cullum v. Coxe*, 1 Dallas 139 (1785), Chief Justice McKEAN observed that the practice of bringing suits to use had always prevailed when he was at the bar. The bringing or marking of suits in assumpsit to use (now changed by Pa. R. C. P. Nos. 2001-2025) has always been looked on as a formal matter merely, and the caption of suits can be changed in the appellate courts, if necessary: *Frey v. United Traction Co. of Pittsburgh*, 320 Pa. 196, 199, 181 A. 775: *Axe v. Stern*, 120 Pa. Superior Ct. 235, 238, 182 A. 124; *Ronca v. B. & F. Marine Ins. Co. Ltd.*, 314 Pa. 449, 452, 172 A. 475. The paying defendants were subrogated to all the rights of Lit Brothers and that included this suit.

As to the fact that the three paying defendants here have used a nominee instead of continuing the action in their own names, see *Morris v. Oakford*, 9 Pa. 498. There, two people secondarily liable, paid the amount due on a bond and mortgage and had the mortgagee assign them *to a trustee for them*. He issued a sci. fa. sur mortgage and got judgment. See also, *City Nat. Bank v. Atkinson*, 316 Pa. 526, 175 A. 507.

The judgment *against the four defendants*, which should be entered in this action, cannot harm Goldentyer, as it is in no sense conclusive of the rights of the four defendants among themselves. It merely puts the paying defendants in a position to enforce contribution

to the proper extent, if any. The amount of any execution against him is subject to the control of the court in the exercise of a sound discretion: *Wright v. Grover & Baker S. M. Co.*, 82 Pa. 80, 83; *Western Pennsylvania Hospital v. Library Hall Co.*, 189 Pa. 269, 272, 42 A. 183; *Boltz's Estate*, 133 Pa. 77, 83, 19 A. 303; *Miller's Appeal*, 119 Pa. 620, 631, 632, 13 A. 504; *Goldman v. Mitchell-Fletcher Co.*, 292 Pa. 354, 365, 141 A. 231.

The first, fourth and fifth assignments of error are sustained. The rulings complained of in the second and third assignments were also erroneous, but, in view of our action on the others, they are unimportant.

The judgment is reversed, and the record is remitted to the court below with directions that judgment be entered for the use plaintiff against all four defendants for the face of the notes plus costs of protest and interest to date.