## ASSIGNED ESTATE OF STEPHEN W. BOLTZ.

APPEAL BY JOSEPH WAGNER ET AL. FROM THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 21, 1890—Decided March 3, 1890.

[To be reported.]

1. A surety in the official bond of a county treasurer, having made good a deficit in the accounts of such treasurer, is entitled to be subrogated to the rights of the county upon the bond, and, without any formal order of substitution, may claim thereon a dividend out of the assigned estate of the treasurer.
2. In such case, the dividend, to which the surety is entitled, is to be awarded, not upon the penalty named in the bond, but upon the amount which the surety has been compelled to pay, the latter being the real debt; and there is no distinction in this respect between an official bond and an ordinary bond.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 247 January Term 1890, Sup. Ct.; court below, number and term not given.

On February 8, 1889, David Long filed his final account as assignee for the benefit of creditors of Stephen W. Boltz. Subsequently, the court appointed *Mr. Charles H. Killinger*, auditor, to distribute the fund shown by the account to be in the hands of the assignee.

## Auditor's Report.

The auditor reported, finding the following facts: Stephen W. Boltz, the assignor, being elected treasurer of Lebanon county in November, 1881, for the term of three years from January 2, 1882, gave his official bond to the county of Lebanon, dated December 30, 1881, conditioned as required by law, in which Joseph Wagner, Moses Forney, Ephraim Forney, George W. Runkel, together with L. W. Cranmer and John Benson, were jointly and severally bound with him, as his sureties, in the sum of $90,000.

The report of the county auditor, at the expiration of the treasurer's official term, found a balance of $9,854.82 due from him to the county. On February 14, 1885, there being a deficiency of $4,354.82 in the amount of money which should have been in the hands of Boltz, as county treasurer, the report of the county auditors was filed in the Court of Common Pleas of the county, and became a lien on Boltz's real estate. On March 28, 1885, he executed and delivered the deed of assignment upon which these proceedings were based.

Subsequently, Joseph Wagner, Moses Forney, Ephraim Forney and George Runkel, four of the sureties in the treasurer's official bond, having paid the balance due from Boltz to the county, filed a suggestion of their right to subrogation upon the lien of the county acquired by filing the report of the auditors, and issued thereon a writ of scire facias. On December 31, 1888, judgment was rendered in their favor upon the scire facias for $5,177.86, subject to certain credits for payments made to them out of the funds of the assigned estate, the court ordering that these credits should not affect the right of the use plaintiffs, in the distribution of the assigned estate, to receive a dividend calculated upon the full amount of the judgment.

Upon the facts so found the auditor reported as follows:

The four sureties, Wagner, the Forneys and Runkel, claim to be allowed a dividend on $90,000, the penalty of the bond given to the county of Lebanon by the assignor, as county treasurer, in which they joined as sureties.

Having paid the debt of the county treasurer to the county, it is clear that they are subrogated to all the rights and remedies of the county: Hess's Est., 69 Pa. 272: Bispham Eq.,

§ 335.   They can take advantage both of the judgment on the report of the county auditors, as well as of the rights of the county upon this bond.

The amount paid by these sureties, March 30, 1885, was $4,354.82.   By revival on scire facias this was fixed by the verdict of the jury on May 24, 1888, including interest, at $5,177.86; interest from that date amounts to $452.96.   So, the principal on which they would be entitled to a dividend would be $5,630.82, unless they are entitled to a dividend on the full amount of the bond as they claim.   We have found the real debt to be $3,218.71.

Your auditor has not been able to find any authorities bearing on the subject.   The very object of the bond given to the county is to secure the county funds, and for that purpose the county received $90,000 of security.   If the county were here claiming a dividend out of this estate, it would claim it on the full amount for which the county took security, until the real debt were paid in full, in furtherance of the purpose for which this bond was given.   These sureties have the same rights the county would have.   Your auditor, therefore, sustains this claim, and allows them a dividend on $90,000, until the $3,218.71 actually due them has been paid; and, as a dividend on that amount would much more than pay their claim in full, we will simplify the calculation of the dividends, in the distribution, by first deducting the claim of these sureties from the fund for distribution, and then dividing the balance among the remaining creditors in proportion to their respective claims.

These four sureties have also claimed to receive the entire proceeds of the lot of ground sold to Peter N. Lessley for $420.96, and accounted for by the assignee in his first account. The facts are, that Boltz, prior to the assignment, held title to two lots of ground, forming a single tract of land in Belleview. There was some evidence that he held the title as security, i. e. an unrecorded mortgage, but that was not clearly established.   After the assignment on May 23, 1885, the assignee conveyed these premises to Lessley by deed of that date and received the purchase money.

As the lien of the report of the county auditors attached to this tract of land at the time it was filed, February 14, 1885, and as the sureties in paying the amount due the county were

subrogated to its rights and to this lien, they became entitled to the proceeds of the sale of this land and we accordingly award that amount to them, prior to the dividend awarded to them on the $90,000 bond. This determination may become important if your auditor has erred in allowing the dividend on the $90,000 bond, already referred to.

—In accordance with the foregoing, the auditor awarded to the four sureties claiming reimbursement out of the assigned estate, payment of their claim in full.

Exceptions having been filed to the report of the auditor, complaining, inter alia, of his awarding a dividend upon the penalty of the assignor's bond, as treasurer, instead of upon the amount due thereon, the court, McPHERSON, J., sustained the exception to that award, filing an opinion in part as follows:

In other respects, save one, we approve of the auditor's findings and conclusions. The exception to which we refer is the allowance to the sureties of a dividend upon the nominal amount of the assignor's official bond as county treasurer, viz.: $90,000, instead of upon the actual debt due thereon to the county at the date of the assignment. This nominal amount is merely the penalty, and fixes a limit beyond which the liability of the obligors is not to go, but it does not make them liable straightway for the full amount. They might never become liable at all, or if at all, the amount was certainly contingent, wholly depending upon future events. In other words, the penalty here is not the debt; and it is the debt which fixes the proportion of each creditor's interest.

Thus, in Miller's App., 35 Pa. 482, it is said: "By the deed of assignment the equitable ownership of all the assigned property passed to the creditors. They became joint proprietors, and each creditor owned such a proportional part of the whole as the debt due to him was of the aggregate of the debts. The extent of his interest was fixed by the deed of trust." See also Graeff's App., 79 Pa. 148; Miller's Est., 82 Pa. 114–15; Dean's App., 98 Pa. 104, and Jordan's App., 107 Pa. 84; the latter of which declares that "each creditor by the conveyance becomes in equity the owner of such proportionate part of the property assigned as the debt due him bears to the aggregate of debts."

If the penalty is the proper basis here, it would also be the

proper basis in the case of a common bond; but, in either in-
stance this view would certainly do injustice to other creditors,
for upon the common bond it would give to the holder an own-
ership twice as large as his real debt, and here it would give to
the county, whose real debt was about $4,500, an ownership
twenty times as large. In our opinion, the true claim is the
measure of ownership; the real debt, and not a mere nominal
penalty, which may be readily put at any extravagant figure.
We must therefore send the report back to the auditor to
make a new distribution, awarding to the sureties a dividend
based upon the real debt due to the county at the date of the
assignment.

Thereupon, the auditor made and filed a new report award-
ing to Joseph Wagner, Moses Forney, Ephraim Forney and
George W. Runkel the proceeds of certain real estate which
was subject to the lien of their judgment, and also a dividend
out of the personal estate upon the whole amount of the judg-
ment. The report was confirmed by the court and distribu-
tion decreed in accordance therewith. The claimants, Joseph
Wagner et al., thereupon took this appeal, specifying that the
court erred:

1. In sustaining the exception to the award of a dividend
upon $90,000 to the appellants, in the auditor's first report.

*Mr. Josiah Funck*, for the appellants:

1. Having paid to the county the amount of the treasurer's
shortage, the sureties were subrogated to the county's rights
upon the official bond by operation of law and without any as-
signment of it to them: Fleming v. Beaver, 2 R. 128; Wright
v. Sewing Machine Co., 82 Pa. 83; Hess's Est., 69 Pa. 272;
Hunter v. United States, 5 Pet. 172. This bond was properly
taken in the name of the county: Clarke v. Potter Co., 1 Pa.
159. What are the county's rights upon it? Under § 6, act
of June 14, 1836, P. L. 639, construed as in pari materia with
§§ 33, 34, act of April 15, 1834, P. L. 542, we contend that
counties are embraced in the term "commonwealth," and that
when a county recovers judgment upon an official bond, it,
like the commonwealth, acquires a lien for the amount of the
penalty.

2. Without insisting on this point, however, it is evident from the fact that the commonwealth acquires such a lien, that the penalty is regarded as the real debt. The demand is for the penalty, and the condition providing for a release upon certain terms, is no part of the obligation: Miltenberger v. Commonwealth, 14 Pa. 71; Farni v. Tesson, 1 Black 309; McGill v. Bank, 6 Pet. 617. Official bonds are a higher order of security than the bonds to secure the performance of agreements, under §§ 1 to 5, act of June 14, 1836, P. L. 638. The statute confers upon them greater rights, and they are executed for the protection of great public interests. The court below has failed to grasp the meaning of the statutes from which this bond derives its vitality, and, moreover, has forgotten that formerly the penalty was only the real debt, but was collectible as such, and even yet the judgment is always for the penalty, and execution issues for that sum, to be released upon payment in full of the damages assessed, with interest and costs: Barnes v. Webster, 16 Mo. 258 (57 Am. Dec. 232); Byrne v. Hayden, 124 Pa. 170.

3. If the penalty is the real debt, as the act of assembly makes it, why is not the obligee entitled to a dividend upon that sum, until the damages due him have been reached? A creditor may proceed on all the securities he holds, at the same time, until he has made his money: Hildeburn's Est., 8 W. N. 310; Dyott's Est., 2 W. & S. 557; Ayres v. Wattson, 57 Pa. 360. Hence, if the penalty stands only as collateral security, after breach of the condition the creditor takes an equitable interest in the assigned property in the proportion the penalty bears to the aggregate of the debts. There is another important consideration: the person who first brings suit upon an official bond is entitled to take the whole penalty as security for the payment of his claim, to the exclusion of every other claimant: Dallas v. Chaloner, 3 Dall. 500; McKean v. Shannon, 1 Binn. 370; and the principle adopted by the court below would defeat this rule, and place all persons protected by the bond upon the same plane.

*Mr. J. P. S. Gobin*, *Mr. Lee L. Grumbine* and *Mr. John Benson*, for the appellees, were not heard.

In the brief filed, counsel cited: Act of April 17, 1843, P. L. 273; Carman v. Noble, 9 Pa. 372; Miltenberger v. Com-

monwealth, 14 Pa. 74; Snyder Co.'s App., 3 Gr. 38; Hoff-
man's Est., 2 Pears. 157; Baxley v. Linah, 16 Pa. 250; Miller
v. Rohrer, 127 Pa. 384.

PER CURIAM:

The appellants were entitled to be subrogated to the rights
of the county of Lebanon. They were the sureties upon the
official bond of the county treasurer, and had made good his
deficit in his accounts as such treasurer. When, therefore, the
assigned estate of the insolvent treasurer came before the court
for distribution, they had the right to claim a dividend out of
the said estate, and it is immaterial whether there was a formal
substitution or not. It is the right of substitution which is the
substantial thing. The right of substitution being shown, and
the surety having paid the debt, he succeeds by operation of
law to the rights of the creditor. This is settled by a bead-roll
of authority. It is sufficient to refer to Fleming v. Beaver, 2 R.
128; Wright v. Sewing Machine Co., 82 Pa. 80.

The right of the appellants to claim a dividend upon the
whole amount of the bond is another matter. The bond was
in the sum of $90,000. The deficit of the county treasurer was
$4,354.82. Had suit been brought upon the bond, and judg-
ment entered thereon, the said judgment would have been for
$90,000, with leave to take out execution for the said sum of
$4,354.82. The latter is the real debt, and upon this sum the
appellants were entitled to a dividend out of the assigned es-
tate. In the case of a voluntary assignment, the estate passes
to the creditors in proportion to their respective claims. In the
case of an ordinary bond, where the penalty is usually double
the amount of the real debt, it is not pretended that the holder
thereof can claim a dividend upon the penalty. All the cases
say the dividend must be upon the debt: Miller's Est., 82 Pa.
113; Graeff's App., 79 Pa. 146; Dean's App., 98 Pa. 101; Jor-
dan's App., 107 Pa. 75. Regarding the creditors of an assigned
estate as the equitable owners thereof, the principle contended
for would give the county of Lebanon an ownership in this
estate to the extent of $90,000, whereas its claim is limited to
a little over $4,000. We know of no rule of law which would
give the county such an advantage over other creditors.

Decree affirmed, and the appeal dismissed, at the
costs of the appellants.