## Assigned Estate of Jamison & Co.   Boyer's Appeal. Cooper's Appeal.   Bearn's Appeal.   Dow's Appeal.

| 163 | 143 |
| 177 | 605 |
| 163 | 143 |
| 187 | 387 |
| 163 | 143 |
| 214 | 260 |
| 163 | 143 |
| 37SC | 4184 |

*Partnership—Judgment—Partner's equity—Partnership and separate creditors.*

Where there are partnership and separate creditors and partnership and separate assets, and the firm is insolvent, each class has priority upon its respective estate.

Where a person has a judgment against a partnership, and also a separate judgment against the individual partners for the same debt, he is entitled to a dividend on each judgment out of its respective estate.

*Assignment for benefit of creditors—Date at which claims are to be taken in calculating their amount.*

Creditors become equitable owners of an insolvent estate in the proportions of their debts at the time of the assignment.   A subsequent enlargement of a claim by judgment including interest or penalties cannot increase such share.   Pittsburg & Steubenville R. R. Co.'s Ap., 2 Grant, 151, distinguished.

*Trusts—Conversion of stock—Assignment for benefit of creditors—Distribution—Preferences—Set-off.*

Where stock in the hands of an insolvent banker is converted prior to the banker's assignment, though on the same day, not directly by the banker, but by creditors with whom he has pledged it, the owner of the stock is not entitled to payment in full out of the assigned estate on the ground that the conversion of the stock was a breach of trust which enables him to follow the proceeds specifically.

Where a broker, with whom stock has been deposited as collateral for purchases, converts the stock, and subsequently makes an assignment for the benefit of creditors, the owners of the stock are not entitled to a dividend upon the entire value of the stock without any deduction or set-off for the unpaid balance due by them to the broker.

*Measure of damages for conversion of stock.*

Where stock deposited with the broker as collateral for purchases is pledged by the broker and sold by the pledgees, the measure of damages for the conversion of the stock is its market value at the date of the conversion.

Argued April 13, 1894.  Appeals, Nos. 376, 410, 437, 438, by Henry K. Boyer, trustee, R. K. Dow, David Bearn and Thomas V. Cooper, from order of C. P. No. 3, Phila. Co., Dec. T., 1890, No. 270, on exceptions to auditor's report distributing assigned estate of B. K. Jamison & Co.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Exceptions to auditor's report, distributing assigned estate of B. K. Jamison & Co.

From the report of the auditor, Henry D. Paxson, Esq., it appeared that, on June 14, 1890, Henry K. Boyer, state treasurer, deposited with B. K. Jamison & Co. a large amount of state funds.  The firm gave him two bonds and warrants of attorney, one in which they were jointly and severally bound, and one in which they individually bound themselves to guarantee the payment of the first bond.  Judgments were entered upon these bonds and marked to the use of Boyer, trustee, for his sureties, and Mr. Boyer, as trustee, claimed as a partnership creditor, and also as a creditor of the individual members of the firm.  The auditor allowed a dividend on the full amount out of each fund, on the authorities cited in the opinion of the Supreme Court.

The Indiana County Deposit Bank and other creditors claimed interest on the amounts due them respectively from the date of the assignment to the date of the hearing before the auditor.  The auditor rejected these claims, allowing interest only up to date of assignment, and where claims had been reduced to judgment, after the date of the assignment, he decreased the judgments by the amount of the interest to the date of the assignment, on the authorities cited in the opinion of the Supreme Court.

On the next claim the auditor reported :

"James J. Redstrake on Nov. 12, 1890, gave B. K. Jamison & Co. an order to buy for him 200 shares of Reading railroad stock. Mr. Redstrake paid Jamison & Co. on account of the purchase $2,100 in cash. The stock was bought by Jamison & Co. for Mr. Redstrake, to whom they delivered a receipt, produced to the auditor, of which the following is a copy :

"'PHILADELPHIA, 11, 12, 1890.

"'Bo't for account and risk of J. J. Redstrake, Esq.

| | | |
|---|---|---|
| 200 shares Reading $14\frac{9}{16}$ | | $2,925 |
| Credit | | 2,100 |
| | | |
| Balance | | $ 825 |

Received Payment,

(Signed) B. K. JAMISON & Co.'

"When the stock was purchased, Redstrake was unable to pay the balance of $825. It was agreed between the parties that it should be paid Jamison & Co. by Redstrake, with interest at six per cent, in the early part of December, 1890, and that meanwhile the stock purchased should be carried by Jamison & Co. for him. These constitute the negotiations between the parties, which were as is usual in general stock transactions.

"The auditor further reports that while the stock purchased was entered up in the purchase and sale book of Jamison & Co. in the usual manner, as having been purchased for account of James J. Redstrake, 100 shares from one F. Bayne and 100 shares from one Brinton, all at $14\frac{9}{16}$, he is unable, from the evidence that could be ascertained, to discover or trace the identity of the stock in its various transfers and transmutations usual and which took place in its hypothecation by Jamison & Co. to borrow money to enable them to carry it for Redstrake. Therefore, while your auditor finds that, on November 13, 1890, the books of Jamison & Co. show there were 100 shares loaned to Dick Brothers and 100 to Potter, he is unable to learn that this stock has any relation or bearing to the identical stock or its direct substitute purchased for Redstrake. On or about Nov. 28, 1890, the date of the assignment, this stock, with other stock, presumably containing that belonging to Redstrake, was in bulk sold by the persons

with whom it was deposited as collateral to cover the money which had been loaned by them to Jamison & Co.

" Upon Nov. 28, 1890, the date of the assignment of Jamison & Co., a paper produced to your auditor was received by Redstrake from them, of which the following is an exact copy:

" ' PHILADELPHIA, 11, 28, '90.

" ' Sold for account and risk of J. J. Redstrake,

By B. K. Jamison & Co.

100 Reading to Mr. Laughlin at 16⅛.

100 Reading to G. H. North at 16⅛.'

" No previous demand had been made by Jamison & Co. upon Redstrake for the $825 due on the stock since it was to have been paid in December.   Jamison & Co., however, were unable to redeem their collaterals, and they were in consequence sold as above stated.   Immediately on receipt of this paper Mr. Redstrake, by telephone, asked Jamison & Co. by what authority they had sold his stock, and the reply given was that they had made an assignment.   A few days afterwards, to wit, Dec. 2, 1890, Redstrake came to Philadelphia, called upon B. K. Jamison & Co., and in the presence of a witness, Mr. A. McClean, tendered to Jamison & Co. the balance in cash due them, viz: $825, and the proper interest, in order to perform his promises, and demanded his stock, which amount they refused to accept, and which stock they refused to deliver, stating that they had made an assignment.

" The same tender and demand was upon the same day made to S. G. Thompson, Esq., the assignee, and he likewise refused to receive the money or to deliver the stock.

" Your auditor finds that the market quotation of Reading railroad stock at the Stock Exchange, at the time the said stock was sold, viz: Nov. 28, 1890, was $16⅛ per share; and, further, that the highest price at which such stock has sold at the Stock Exchange since the date of the tender made, viz: Dec. 2, 1890, and the date of the present hearing, viz: May 29, 1893, was upon Feb. 11, 1892, when it reached $35.00 per share. . . .

" Where the identity of the fund cannot be traced, where the chancellor cannot lay his hand upon it, or the change it may have produced, and say, ' This is the property of the cestui que trust,' then it is never denied that the real owner no longer has specific remedy against any part of the estate, but must come in pari passu with the other creditors. . . .

" Apart from these considerations it would be foreign to your auditor's duties to award claims set up adversely to the funds in the hands of the accountant which have been decreed to the general creditors of the assignors.  If the contention that the stock in question or its equivalent is the property of Mr. Redstrake be correct, then there could have been no assignment of the same and the property could not be distributed by your auditor.  In that case, the claimant ought to have taken remedy in other proceedings.

"In the case of Wylie's and Quail's Appeal, 92 Pa. 198 (1879), it is said: 'The fund of the court was by the decree of the court appropriated to creditors; the auditor was ordered to distribute it among the creditors, and he had no authority to pass upon the rights of an adverse claimant.  The decree definitely fixed the rights of the creditors to have the money in court divided among themselves, and, as long as the decree stood, neither the auditor nor the court could turn it over to some other party.'  Beginning with Okie's Appeal, 9 W. & S. 156, there are numerous authorities to the same effect in Williams's Appeal, 101 Pa. 480; Geist's Appeal, 104 Pa. 354.

"In awarding distribution to Mr. Redstrake upon the valuation of the 200 shares of stock, there yet remains to be determined what market quotation should be taken as a basis.  It was contended with considerable zeal and ability that the highest market price reached by the stock from the date of its sale down to the time of its present hearing should govern under the rulings in The Bank of Montgomery v. Reese, 26 Pa. 143, decided in 1856, and the later case of Musgrave v. Beckendorff, 53 Pa. 310 (1866).  These decisions have been considerably qualified by the more recent cases.  Perhaps it would be more accurate to say that the conditions to which they are still applicable have been more fully interpreted by the light of the later decisions.  Their careful examination will demonstrate such conclusion.

"In the case of The Bank of Montgomery v. Reese, Mr. Reese was one of the stockholders of the bank.  By virtue of such ownership he was entitled to subscribe to additional stock, newly issued, proportionately to the holdings.  When he tendered the amount which would entitle him to his new stock, the bank refused his subscription.  Here, as the court pointed

out, it is plain the corporation was the trustee of its stockholders. The right to purchase the stock did not exist, except under certain conditions. Mr. Reese could not protect himself against the breach, go into open exchange and buy it upon the same terms; perhaps not at all. There was not the mere intervention of a general stock broker, as in the ordinary stock transaction, where the purchaser buys as a stranger and deputizes a stock broker as his agent to purchase in accordance with the customs usual. The stock rose in value, and in order to fully compensate Mr. Reese for the injury, the court applied the rule contended for, in effect deciding that the bank, being the trustee, still continued to hold at the increased valuation in consequence of its wrongful refusal to deliver, involving a deliberate breach of trust.

"Following this decision, in Musgrave v. Beckendorff, the same rule was applied in redressing an injury involving a wanton breach of trust. The plaintiff had loaned the defendant bonds to enable the latter to raise money on them, under an agreement that the identical bonds were to be returned at a certain time, and the bonds were never returned.

"Such other dicta in these two cases tending to describe the rule as applicable generally to all stock transactions has been characterized as 'extra judicial' and not essential to the case. Huntingdon, etc., Railroad Co. v. English, 86 Pa. 253 (1878).

"In the case under present consideration there was no special trust created, nor was there capacity upon the part of Jamison & Co. other than that ordinarily existing upon the intervention of a stock broker in the purchase of stock to be carried by the broker for the customer. Mr. Redstrake employed them as brokers to buy stock for him. He was unable to pay for it and wished them to 'carry it.' The purchase was made in accordance with the custom of brokers in such cases. It was made under the principle of law that when one employs another as his agent in a particular capacity, in the absence of an express stipulation, the law implies an agreement that it shall be done with reference to the usual customs of that agency. Mr. Redstrake could not complain that in pursuance of a custom of brokers the stock was mingled with the stock of other customers of Jamison & Co. when they had not fully paid for it. In the case of Gilpin v. Howell, 6 Pa. 57, as early as 1846, Jus-

tice BELL, in delivering the opinion of the court, said: 'It
may be, that even in a pledge of stock, which frequently passes
from hand to hand with almost as little earmark as money
itself, the pledgor may identify and stipulate for a return of
the very same shares, by handing his certificate to the pledgee
with a blank power to transfer, not to be used except on a
failure to redeem, or in some other mode devised for the same
purpose.   But where, as here, the shares pledged never stood
in the name of the pledgor, but passed at once from the former
owner to the pledgee, without anything done by the former to
set them apart from other like shares of the latter, or even a
request preferred to this effect, it is not perceived how, with
any show of reason, it can be made a subject of complaint, that
the pledge, necessarily, was mingled with the other similar
stock of the pawnee.   The plaintiff, by her agent, dealt through-
out with the defendants as stock brokers, engaged in the busi-
ness of buying and selling stock on their own and others' ac-
count, and so constantly receiving and again transferring shares
of stock, either by a blank power or by a simple order of trans-
fer entered upon the books of the corporation.   Under such
circumstances, I repeat, it was incumbent on the plaintiff to
impress, in some way, upon her shares, a mark of discrimina-
tion, if she desired them to be kept separate from the mass of
stock in the possession of the defendants.'

"In the course of raising money to pay for the stock it was,
under the custom of brokers, pledged in bulk with other stock
by Jamison & Co.   They were unable to redeem the whole of
the stock, became financially embarrassed, and made an assign-
ment for the benefit of their customers and creditors generally.
Redstrake made tender of the amount due by him, but Jamison
& Co. were unable to furnish the stock.   Here there was no
deliberate breach of trust.   Jamison & Co., however, undertook
to deliver the stock to Redstrake and are liable for their failure
to perform the agreement, which leads to a consideration of the
later cases as to the measure of damages.

"In North v. Philips, 89 Pa. 254, Justice GORDON said: 'In
the case of the Huntingdon and Broad Top Railroad v. English,
86 Pa. 247, this court, without dissent, ruled that the rule of
damages as stated in the Bank v. Reese, 26 Pa. 143, did not ap-
ply to ordinary stock contracts, but only to trusts and cases

where justice could not be reached by the ordinary measure of damages.' And damages are ascertained by the market value of the stock at the time of the conversion, from which should be deducted the amount due upon the stock by the claimant: Neiler v. Kelley, 69 Pa. 406; Work v. Bennett, 70 Pa. 484; R. R. v. English, 86 Pa. 247; Pa. Co. v. R. R., 153 Pa. 156."

The auditor made an award accordingly.

The cases of Dow, Bearn and Cooper were similar to that of Redstrake and were disposed of in the same way.

Exceptions by the parties adversely affected by these allowances were sustained by the court in an opinion by FIN-LETTER, P. J., 3 Dist. R. 217.

The auditor reported a new distribution in which Redstrake's claim was given a preference, and the other claims given dividends on the highest market value of their stock less deductions as stated above. Exceptions by all the claimants were dismissed and the distribution confirmed.

*Errors assigned* by Boyer were to the action of the court in refusing to allow him to participate in the two funds, and in sustaining the exceptions of the other claimants to the original ruling of the auditor, quoting the exceptions.

*Errors assigned* by the other claimants were to the dismissal of their exceptions to the amended report and in not awarding them the full amount of their claims.

*J. Quincy Hunsicker, Mayne R. Longstreth* with him, for appellant, Henry K. Boyer, trustee.—Where a creditor of a firm has, in addition to the partnership obligation, the several promises of all or any of the individual partners, he can prove against both the joint and separate estate, and if a separate creditor has security upon joint property, or a joint creditor has security upon separate property of one of the partners, the creditor may prove his debt and at the same time enforce and realize upon his security: 17 A. & E. Ency. L. 1210, and note; Besore v. Potter, 12 S. & R. 154; Klapp v. Kleckner, 3 W. & S. 519; Brough's Est., 71 Pa. 460; Black's Ap., 44 Pa. 503; Gallagher's Ap., 114 Pa. 353; Morris v. Olwine, 22 Pa. 441; Taylor's Ap., 81 Pa. 460; Miller's Est., 82 Pa. 113; Kittera's

Est., 17 Pa. 416 ; Miller's Ap., 35 Pa. 481 ; Marsh's Est., 5 Pa.
C. C. R. 159 ; Clark's Est., 2 Chester Co. R. 118 ; 2 Bates
on Partnership, § 841 ; Story, 7th. ed. § 384 ; Berkshire Woolen
Co. v. Juillard, 13 Hun, 506 ; Emery v. Bank, 73 Cliff. 507 ;
Gray's Est., 11 N. Y. 404 ; Bradley's Case, 2 Bliss (U. S.) 515 ;
Nason's Case, 70 Maine, 363 ; Borden v. Cuyler, 10 Cush. 476 ;
Fuller v. Hooper, 3 Gray, 334 ; Morris v. Morris, 4 Gratt. 293 ;
Ashby v. Porter, 26 Gratt. 455 ; Fowlkes v. Bowers, 11 Lea,
144 ; Emery v. Bank, 3 Cliff. 507 ; Mead v. Bank, 6 Blatch.
180 ; 2 Lindley, Part., Blackstone ed. §§ 743–51 ; Simpson v.
Heming, L. R. 10 Q. B. Cas. 406 ; Lewis's Case, 2 Hughes,
320 ; Bigelow's Case, 2 Nat. Bank Reg. 371 ; Howard's Case,
4 Nat. Bank Reg. 571 ; Stephenson v. Jackson, 2 Hughes, 204 ;
Tesson's Case, 9 Nat. Bank Reg. 578 ; Foot's Case, 8 Ben.
(U. S.) 228 ; Thomas's Case, 8 Biss. 139 ; Baxter's Case, 18
Nat. Bank Reg. 62 ; Jordan's Case, 2 Fed. R. 320 ; Bradley's
Case, 2 Biss. 515 ; Farnum's Case, 6 Law Rep. 21 ; Wilson's
Case, L. R. 7 Ch. Ap. 490 ; Honey's Case, L. R. 7 Ch. Ap.
178 ; Bank v. Waddell, 5 Ap. Cas. 191 ; Riegart v. White,
52 Pa. 438 ; Kramph's Exrs. v. Hatz, 52 Pa. 525 ; Wood v.
Sherman, 71 Pa. 100 ; 9 A. & E. Ency. L. 68 ; Marberger v.
Pott, 16 Pa. 9 ; Allen v. Hubert, 49 Pa. 259 ; Ashton v. Bay-
ard, 71 Pa. 139.

The date of the assignment fixes the status of parties with
respect to the assigned estate : Miller's Ap., 35 Pa. 481 ; Pat-
ten's Ap., 45 Pa. 151 ; Hess's Est., 69 Pa. 272 ; Jordan & Por-
ter's Ap., 107 Pa. 75 ; Dean & Sons' Ap., 98 Pa. 101 ; Yoder's
Ap., 45 Pa. 394 ; McElhenny's Ap., 46 Pa. 347 ; Scott v. Mor-
ris, 9 S. & R. 123.

The right of pursuing a fund fails when the means of ascer-
tainment fail. And this is the case when the subject-matter is
converted into money or confounded with a mass of property
of the same description. A claim before an auditor cannot be
adverse to the assignment: Thompson's Ap., 22 Pa. 16 ; Story's
Eq. § 1259 ; Okie's Ap., 9 W. & S. 156 ; Jefferis's Ap., 33
Pa. 39 ; Wylie's & Quail's Ap., 92 Pa. 196 ; Strickler's Ap.,
10 W. N. 535 ; Frankenfield's Ap., 11 W. N. 373 ; Williams's
Ap., 101 Pa. 474 ; Geist's Ap., 104 Pa. 351.

The damages for a conversion in a case like the present
against a fund for distribution, at least, is the market value at

the time of the conversion : Work v. Bennett, 70 Pa. 484 ;
Wilson v. Whitaker, 49 Pa. 114; North v. Phillips, 89 Pa.
250 ; Pa. Co. v. R. R., 153 Pa. 160 ; Taylor's Ap., 81 Pa. 460 ;
Miller's Ap., 35 Pa. 481; Brough's Est., 71 Pa. 460 ; Patten's
Ap., 45 Pa. 151; Hess's Est., 69 Pa. 272; Jordan & Porter's
Ap., 107 Pa. 75 ; Dean & Sons' Ap., 98 Pa. 101.

*John Cromwell Bell*, for the Indiana County Deposit Bank,
appellee.—Boyer was not entitled to dividends out of both
funds.   All contracts with partners are joint and several: Rice
v. Shute, 5 Burr. 2611; Bell v. Newman, 5 S. & R. 85 ; Gal-
lagher's Ap., 114 Pa. 353.   The giving of a joint and several
bond by partners is nugatory, as it creates no additional lia-.
bility.   All distinction between joint and several obligation is·
obliterated in Pennsylvania: Acts of April 6, 1830, P. L. 277 ;
April 11, 1848, § 3, P. L. 536 ; Brewster's Admx. v. Sterrett,
32 Pa. 119; Moore's Ap., 34 Pa. 411 ; Ferguson v. Wright, 61
Pa. 258.   Partnership creditors have a prior right to payment
out of the partnership assets, in case of insolvency, and cannot
resort to the separate property until after the individual credit-
ors have been paid : Black's Ap., 44 Pa. 503.   Equity regards
the substance and not the form : Snodgrass's Ap., 13 Pa. 471 ;
Crow v. Com., 16 Pitts. L. J., O. S. 250 ; Forrest v. Waln, 4
Yeates, 337 ; Kountz's Ap., 18 Pitts. L. J., O. S. 51 ; Maffett v. ·
Leuckel, 93 Pa. 468 ; 2 Lindley, Part., Ewell's 2d Am. ed. 745.
A preference of creditors is forbidden by law: Acts of April 17,
1843, P. L. 273 ; April 16, 1849, P. L. 664 ; Hopkins & John-
son's Ap., 90 Pa. 77; R. R. Co.'s Ap., 70 Pa. 355; Bayard's ·
Ap., 72 Pa. 453.   The position of the court below is supported
by Bank v. Kenney's Assignee, 79 Ky. 133; Blumer's Case, 13
Fed. R. 622.

A creditor who obtains a judgment after an assignment for
the benefit of creditors is entitled to a dividend on the amount
of the judgment and subsequently accruing interest, and not
on the amount of the debt at the date of the assignment: Pitts-
burg & Steubenville R. R. Co.'s Ap., 2 Gr. 150; Hildeburn
& Co.'s Est., 8 W. N. 310.

*J. Campbell Lancaster*, *Charles E. Lex* with him, for Red-
strake.—The sale of the stock was a breach of trust : Simmons

v. Bank, 1 Ch. 270 (1891). And its proceeds can be followed into the assignee's hands: Cooke's Case, L. R. 4 Ch. D. 123; Frith v. Cortland, 2 H. & M. 417; Pennell v. Deffell, 4 D. M. & G. 372; Hallett's Trusts, L. R. 13 Ch. D. 696; Thompson's Ap., 22 Pa. 16; Bank v. Tyler, 3 W. & S. 373.

*Lewis Lawrence Smith, Isaac Johnson* with him, for Cooper.

Cooper was entitled to the full amount of his claim: Bank v. Reese, 26 Pa. 143; Neiler v. Kelley, 69 Pa. 406; Work v. Bennett, 70 Pa. 484; R. R. v. English, 86 Pa. 247; North v. Phillips, 89 Pa. 250; Pa. Co. v. R. R., 153 Pa. 166.

*James Collins Jones, Lewin W. Barringer* with him, for Dow.

Dow had a right to have his damages measured by the highest value of his bonds up to the time of the audit: Bank v. Reese, 26 Pa. 143; Reitenbaugh v. Ludwick, 31 Pa. 131; Persch v. Quiggle, 57 Pa. 247; Musgrave v. Beckendorff, 53 Pa. 310; Work v. Bennett, 70 Pa. 484.

Dow had a right to have a dividend on the full amount of his claim without having his indebtedness to assignors set off against his claim: Persch v. Quiggle, 57 Pa. 258; Work v. Bennett, 70 Pa. 484; Kater v. Steinruck's Ad., 40 Pa. 501; Arthur v. Sylvester, 105 Pa. 233.

*A. Lewis Smith,* for Bearn, submitted a paper-book in which authorities cited above were given.

BOYER'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894:

I. The main question is whether appellant, having a judgment against the partnership, and also a separate judgment against the individual partners for the same debt, is entitled to a dividend on each out of its respective estate.

It is settled that a creditor of an assigned estate is entitled to a dividend on the full amount of his debt at the date of the assignment, notwithstanding he has collateral security of any kind on which he has, or may hereafter receive a partial payment of his debt: Morris v. Olwine, 22 Pa. 441; Patten's Appeal, 45 Pa. 151; Brough's Est., 71 Pa. 460; Graeff's Appeal, 79 Pa. 148; Miller's Est., 82 Pa. 113. "The accumulation of

remedies does not diminish his rights.    If a judgment creditor has a right to resort to the personal estate for the payment of his whole debt, without regard to his lien on the real estate, one who has a bond which may be turned into a judgment has the same right; and that right is not impaired by any lien which he may have by mortgage on the land. . . . If this was the right of the creditor before the assignment, it remained the same afterwards : " Morris v. Olwine, supra.    The creditors of an assigned estate are the equitable owners of it in the proportion of their claims, without regard to the securities they may hold.    It would be difficult to imagine a severer application of the rule than was unhesitatingly made in Graeff's Appeal, supra. The creditor had three judgments, which were liens on the debtor's real estate, and after the assignment the land was sold and the proceeds paid two of the judgments in full and part of the third, yet in the distribution of the personal estate it was held that the creditor was entitled to a dividend on his entire debt, to wit, the amount of the three judgments.    The only limitation is that he cannot have more than payment in full.

The fact that the debtor who assigns, and the owner of the collateral are the same person or persons makes no difference in the case.    It is the right to resort to two funds which gives the creditor his separate claim on each.

This consideration is decisive of the present case.    The funds are different.    The partners are liable individually, but it is by reason of their membership of the firm, and their individual property is liable only secondarily.    It is the settled rule that where there are partnership and separate creditors, and partnership and separate assets, and the firm is insolvent, each class has priority upon its respective estate : Black's Appeal, 44 Pa. 503.    The appellant was in both classes, he had a judgment in each which gave him a primary claim on that particular fund. Such claim in either class was not lessened, nor its position altered in regard to its own class by his possession of collateral security in the shape of a primary claim in the other.    If he had had government bonds or railroad or other stock of an individual partner pledged for the firm debt, or a mortgage on individual real estate, his case would have been expressly within the decisions already cited, and there could have been no doubt that his claim on one fund would have been unaffected

by his security on the other.  The judgments on the separate
and different bonds stood on precisely the same footing.  It
was the ordinary case of a creditor with collateral security on
another fund, and must follow the same rule.  The learned
court below was in error in refusing the appellant a dividend
out of both funds.

Though this point has apparently never been decided before
by this court in regard to claims against a partnership, yet the
present conclusion rests on irresistible deduction from prin-
ciples firmly established by our own cases, and the array of
authorities cited by appellant shows conclusively that it is in
harmony with the law as held in a large majority of the other
states.

II.  The next question relates to the date at which the claims
are to be taken in calculating their amount.  The cases already
cited, to which on this point may be added Miller's Appeal, 35
Pa. 481, Jordan's Appeal, 107 Pa. 75, and Boltz's Estate, 133
Pa. 77, have settled that the creditors become equitable owners
of an insolvent estate in the proportions of their debts at the
time of the assignment.  As on the one hand subsequent par-
tial payment through means of outside collaterals does not di-
minish a creditor's proportionate share of the assets assigned,
so on the other an enlargement of his claim by judgment in-
cluding interest or penalties cannot increase such share.  This
was expressly decided in regard to an insolvent corporation, in
Dean & Son's Appeal, 98 Pa. 101, in which the decision was
rested on the rule above cited as to ownership by the creditors,
and it was said that there was no reason why the same princi-
ple should not apply to both corporations and individuals.  This
case is the corollary of that, and we see no good ground to
question the result then reached.  The auditor's first report
reducing all judgments to an amount representing their value
at the date of the assignment was correct, and the learned court
was in error in calculating the dividend of the Indiana bank
on a larger basis.  Pittsburg and Steubenville R. R.'s Appeal,
2 Gr. 151, is cited for the contrary view, but it is no authority
for that position.  In that case a judgment had been recovered
subsequent to the assignment, in which interest at twelve per
cent as a penalty had been included.  The auditors allowed a
dividend on the principal but not on the penalty.  This court

held that the fact of its being recovered after the assignment gave the auditors no right to go behind the judgment; as to them it was conclusive in regard both to principal and penalty. The question of reducing it, together with the other claims, to its value at the uniform date of the assignment was not raised or decided.

III. The claim of Redstrake was allowed in full on the ground that the stock was his property and its conversion was a breach of trust which enables him to follow the proceeds specifically. The facts will not sustain this view. The stock was Redstrake's, but it was converted prior to the assignment though on the same day, not directly by Jamison & Co. but by creditors with whom they had pledged it. If the pledge was itself a conversion, as to which the facts are not clear, then the case is still stronger against the view taken by the learned court below. In either case no part of the proceeds can be traced directly to the assets which passed to the assignee. In a certain sense and as between Jamison & Co. and Redstrake there was a breach of trust. But it was only such a breach as occurs whenever there is a wrongful conversion of one man's property by another who has it in his hands, and not the technical breach of trust which authorizes a court to follow the proceeds through all their transmutations until they come to the hands of an innocent purchaser for value. This is not a question of Redstrake's rights against Jamison & Co. but one of distribution among the latter's creditors, who by the assignment became owners of the assigned estate in the proportions of their claims at that date. When the assignment was made Redstrake's property was gone; none of it came to the hands of the assignee; all that Redstrake had left was a claim for its conversion. The assignee took the assets subject to that claim and nothing more. There was no basis on which payment in full should have been decreed.

IV. In regard to measure of damages the claims of Redstrake, Bearn, Dow and Cooper are of the same nature, to wit, the pledge for their own debts by Jamison & Co. of stocks belonging to the claimants and held as collaterals for other purchases, and the sale by the pledgees of the collaterals so pledged. On this state of facts the cases are not distinguishable from Work v. Bennett, 70 Pa. 484, where it was held that the measure of

damages was the market value of the stocks at the date of the conversion. The auditor in his first report awarded dividends in accordance with this rule. Such award was correct and it was error to change it. Just what change was intended to be made by the court below is not easy to grasp, as it is said with apparent correctness that the opinion and the decree are not consistent, and that many of the exceptions sustained are not consistent with the opinion or with each other. It is not worth our while to attempt to untangle the skein. We have indicated the principles on which distribution should be made, and so far as appears to us the auditor's first report conformed to them. Unless there are some points of discrepancy which have escaped us in going through the thirty-eight assignments of error in this appeal, and the nine others in the appeals argued with it, distribution should be made in accordance with that report.

Decree reversed, distribution to be made in accordance with this opinion.

COOPER'S APPEAL, BEARN'S APPEAL, DOW'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894:

These appeals were argued with Boyer's Appeal in the same estate, opinion filed herewith. The only question not covered by that opinion, is the claim by Bearn and Dow that they should be allowed a dividend on the entire value of their stock sold, without any deduction or set-off for the unpaid balance due by them to Jamison & Co., on the ground that no set-off is admissible in action for damages for a conversion. But this is not a universal rule, and Kater v. Steinruck, 40 Pa. 501, and Arthur v. Sylvester, 105 Pa. 233, cited in support of the contention, were decided on their own circumstances. In the former there was a chattel mortgage on which default took place after the death of the mortgagor, whereupon the mortgagee took possession of the goods and sold them. It was held that by the death of the mortgagor the title to the goods passed to his administrator who could maintain trover for their value, and the defendant could not set off the mortgage debt, because if the estate was insolvent the mortgage without possession was void against creditors, and that fact could only be determined by passing the estate through the regular course of administration. Ar-

thur v. Sylvester was trover against a real estate broker for title papers left in his hands merely for the purpose of a sale of the property. It was held that he could not set off his claim for expenses in an unsuccessful effort to sell, because he had no lien on the papers and plaintiff could have demanded them at any time.

In the present case the claimants could not have demanded the stocks from Jamison & Co. before the conversion, without tendering payment of the debts for which they were pledged. It was expressly held in Work v. Bennett, 70 Pa. 484, that a wrongful conversion under such circumstances "dispensed with any tender before suit brought, but as in trover not the chattels themselves but the actual damage to the plaintiff from the conversion is to be recovered, the interest of the pawnee is to be taken into account in settling the amount."

The set-off was properly allowed.

Appeals dismissed at the costs of the appellants.