## Brock's Assigned Estate (No. 2).

Argued April 25, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY, DREW and LINN, JJ.

*Ira Jewell Williams*, with him *Francis Shunk Brown*
and *Ira Jewell Williams, Jr.*, for appellant.—The agree-
ment to buy the note was absolute and not contingent.

Assignors' obligation if not an independent under-
taking was one of suretyship and hence a primary lia-
bility: Sullivan Smythfield Co. v. Welsh, 91 Pa. Supe-

rior Ct. 413; Thommen v. Trust Co., 302 Pa. 409; Rochester Bank v. Fry, 294 Pa. 425; Homewood People's Bank v. Hastings, 263 Pa. 260; Pitts. Construction Co. v. R. R., 227 Pa. 90.

Appellant is a creditor within the meaning of the Insolvency Act, regardless of whether the obligation be absolute or contingent: Stone v. Miller, 16 Pa. 450.

By analogy with bankruptcy and with the case of an endorser of a negotiable instrument, the present claim is provable.

By analogy with the case of a guarantor who becomes bankrupt before the guaranteed claim becomes absolute and certain, the present claim is provable: Bank v. M'Calmont, 4 Rawle 263.

The true rule under the Act of 1901 ought to be that all claims which become certain before the time within which claims must be presented should be allowed.

*Francis H. Bohlen, Jr.,* with him *M. Biddle Saul,* of *Saul, Ewing, Remick & Saul* and *Townsend, Elliott & Munson,* for appellee.—This claim is based upon a contract to purchase a certain note at face if a certain contingency occurs and cannot be construed as a contract of guarantee or suretyship.

A contingent claim is not provable under a Pennsylvania assignment for the benefit of creditors: Chestnut St. T. & S. Co.'s Assigned Estate, 217 Pa. 151.

This claim would not be provable in bankruptcy: Maynard v. Elliott, 283 U. S. 273; Perry v. Sturdevant, 218 N. Y. 678.

The date of the assignment and not the date before which claims must be filed determines provability.

OPINION BY MR. JUSTICE MAXEY, May 26, 1933:

This is an appeal of the Central-Penn National Bank of Philadelphia, hereinafter referred to as the "Bank," from the final decree of the Court of Common Pleas of Philadelphia County, sitting in equity.

On October 24, 1930, Sidney F. T. Brock, then sole surviving member of the firm of Reilly, Brock & Co., a banking and brokerage partnership, executed a deed of assignment for the benefit of creditors. The Bank filed a proof of claim as a general creditor of the assigned estate, for $195,000. This claim had its origin as follows: On July 12, 1930, Reilly, Brock & Co. wrote the Bank this letter: "Dear Sirs: If you will discount a 6% six months' collateral note of Central Properties Company in the sum of Two hundred thousand dollars, said collateral to be second mortgage on the northeast corner of Nineteenth and Walnut Streets, Philadelphia, Pa., and the vacant land contiguous thereto to the east, we agree if said note has not been paid at maturity to purchase said note from you at the then face thereof, you at that time to assign all collateral pledged therewith to us." Upon receipt of the letter the Bank discounted the note mentioned and exacted as collateral the second mortgage referred to in the letter. A receiver was appointed on January 2, 1931, for the Central Properties Co. and for the Corporation Real Estate Co., which executed the second mortgage, and when the note matured on January 12, 1931, it was not paid.

Appellant claims that the contract evidenced by the above letter was a contract of suretyship. Appellee claims that it was a contract of guaranty. What we said in our opinion filed this day in the Brock's Assigned Estate (No. 1), 312 Pa. 7, as to the difference between a contract of suretyship and one of guaranty applies to the issue raised by the Bank in this appeal. The undertaking on the part of Reilly, Brock & Company was an absolute promise to buy the note unless a certain thing should happen, to wit, the payment by the maker at maturity. The fact that the payment to be made was in the future does not affect the absolute character of the obligation. The only contingency which would terminate the obligation of Reilly, Brock & Co. to purchase this note at the face value thereof, i. e., to

pay it, was its payment by the Central Properties Co. Their obligation was in being from the date that the Bank made the loan in reliance on their promise of July 12th. That this obligation was defeasible upon the happening of a subsequent event did not affect its legal absoluteness.

The three cases cited by the court below to sustain its ruling are not applicable. One of them is In re Pettingill & Co., 137 Fed. 143. There it was held that the breach of an agreement by the bankrupt to *guarantee* for an indefinite period the payment of certain dividends by a corporation could not be proved in bankruptcy. The decision was in no way adverse to the provability of a claim arising from suretyship. One of the claims adjudicated in this case was that of the Chicago Newspaper Union. That claim arose from a guaranty by the Pettingill Co. of dividends and redemption of stock three years after the date of issue. The court said: "The contract to redeem the stock three years after the date of issue may fairly be construed as a contract to purchase the stock. ...... I am of opinion that proof is possible."

In the second case cited, In re Merrill & Baker, 186 Fed. 312, it was decided that the holder of a guaranty of an obligation by a bankrupt cannot prove his claim against the estate if the obligation had not matured at the time of the adjudication. In that case the court said: "Counsel......demands dividends upon the face of debts which have largely been paid. To do this these contracts of guaranty must be construed as contracts of suretyship. They are not susceptible of such construction."

The third case cited is Chestnut Street Trust, etc., Co.'s Assigned Estate, 217 Pa. 151, 66 A. 332. In that case the trust company gave a bond "conditioned for the faithful performance of the duties of the guardian. The securities of the ward were delivered by the guardian to the trust company which entered them in its book in

which it entered property held by it in a fiduciary capacity. The trust company made an assignment for the benefit of its creditors on December 24, 1897. Subsequently, in March, 1901, the treasurer of the trust company fraudulently disposed of the securities for his own use." Mr. Justice MESTREZAT said in that case: "At the date of the assignment there had been no breach of the bond given by the trust company as surety of the guardian. The securities were then intact and could have been recovered from the company at that time or at any time prior to March, 1901, when they were fraudulently appropriated by its treasurer. Hence, there was no...... liability on the bond of the surety for more than three years after the assignment of the trust company for the benefit of its creditors......[page 154]. A conditional bond, such as the one in question, does not create an indebtedness absolutely payable in the future, but is an obligation which becomes an indebtedness on the happening of a contingency, and, until the contingency occurs, there is no claim or demand which can be enforced against the assignor of his estate."

It has been decided in Pennsylvania that the holder of a note can prove his claim against the assigned estate of the endorser, even though the note had not matured at the date of the assignment. See Bank of Pennsylvania v. M'Calmont, 4 Rawle 307. In that case this court said in an opinion by Mr. Justice KENNEDY: "The note having been given without consideration, for the accommodation of John Strawbridge, no debt of any kind existed until he got the note discounted, but as soon as that was done a debt was created most clearly, and that too by his act, for his own exclusive benefit; and under his agreement with the drawer and payee of the note, he then became absolutely bound to pay it at maturity, to the bona fide holders, whoever they might be. Although not absolutely bound to pay by virtue of his endorsement, yet, I conceive, that there cannot be a material difference if he were so upon any principle, and that he

was, under his engagement with the drawer and payee, is indisputable. It is clear, then, that a debt was created before the assignment was made, and was growing due at that time; that John Strawbridge, the assignor of the defendants, was in reality the debtor, and the plaintiffs were the creditors, and that he was under an obligation to pay them in any event. Indeed, under a full view of the whole ground of the case, I cannot perceive that his liability had the least shade of contingency about it. On the contrary, I think it was certain, absolute and unqualified. ...... It is sufficient that it existed at the time of the assignment, and was connected with the note in such a way as to follow and accompany it; and this, I think, was clearly the case."

In Woody v. Haworth, 24 Ind. App. 634, 57 N. E. 272, plaintiff and defendant, as partners, endorsed two nonnegotiable notes. Their partnership was then dissolved before the notes matured. Upon maturity the maker failed to pay the notes. Plaintiff paid them. He then sued to recover defendant's proportionate share. Defendant's answer alleged that on dissolution of the firm, plaintiff had agreed to pay the indebtedness of the firm. It was held that the plea was good and the obligation constituted a firm indebtedness, the court saying: "The undertaking endorsed upon the note......was an original, direct, and absolute engagement, binding the signers thereof unconditionally to pay the note."

In Marberger et al. v. Pott, 16 Pa. 9, "an engagement endorsed on a bill or promissory note under seal, for $500, of the same date with the note, as follows: 'I hereby acknowledge to be security for the within amount of five hundred dollars, until satisfactorily paid by W. A.' " was held "to import the liability of a surety, and not that of a guaranty." In that case this court in an opinion by Mr. Justice COULTER said: "The word *security* ......is in broad contrast with the word guaranty, which imports a conditional liability, if due steps are taken against the principal."

The court below cited the following cases: Jamison's Est., 163 Pa. 143, 29 A. 1001; Boltz's Est., 133 Pa. 77, 19 A. 303; Jordan's App., 107 Pa. 75; Miller's App., 35 Pa. 481. These cases were all decided before the Act of June 4, 1901, P. L. 404, was passed. Furthermore, the facts were entirely different from the facts in the instant case.

It may be noted here also that the written agreement on which the Bank's claim is based does not contain in substance the words: "This portion of the agreement is not intended to impose the liability of suretyship," as is required by the Act of 1913, P. L. 971, if one making a written agreement to answer for the default of another wishes to avoid the liabilities of suretyship.

Should we deny the Bank's claim to be recognized as a creditor of Reilly, Brock & Co., we would be giving our Act of 1901 an interpretation inconsistent with the National Bankruptcy Act. So far as the Act of 1901 is inconsistent with the Bankruptcy Act, it would be obliged to yield to the latter. See International Shoe Co. v. Pinkus, 278 U. S. 261.

The Pennsylvania Act of June 4, 1901, P. L. 404, is in harmony with the National Bankruptcy Act: In re Mc-Elvaine, 296 Fed. 112; Walker v. Emerich, 300 Pa. 9, 149 A. 881. The Supreme Court of the United States in Pobreslo v. Bond Co., decided on January 9, 1933, declared that voluntary assignments for the benefit of creditors under state laws (in this case under the law of Wisconsin) should not be regarded as inconsistent with the purposes of the National Bankruptcy Act, and that provisions (in the state law) that "serve to protect creditors against each other and go to assure equality of distribution......are quite in harmony with the purposes of the Federal Act." To the same effect is the decision of the United States Supreme Court in Johnson v. Star, January 9, 1933, upholding as not repugnant to the Bankruptcy Act a statute of Texas providing for voluntary assignments for the benefit of creditors, and for ratable distribution among the consenting creditors.

In bankruptcy the claim of the Central-Penn National Bank to be accorded the status of a creditor would be sustained. In Maynard v. Elliott, 283 U. S. 273, it was held that "the liability of a bankrupt as endorser of a promissory note which has not matured at the time of the adjudication is provable, as a claim 'founded...... upon a contract express or implied.'" In this case Mr. Justice STONE said: "That some contingent claims are deemed not provable does not militate against this conclusion. The contingency of the bankrupt's obligation may be such as to render any claim upon it incapable of proof. It may be one beyond the control of the creditor, and dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach. ...... Or, the contingency may be such as to make any valuation of the claim impossible, even though liability has attached."

In the case now under review there is no part of the Bank's claim "incapable of proof," and none of it "beyond the control of the creditor," in the sense that that phrase was used by Mr. Justice STONE. The creditor has clearly proved its claim. Nor do we have here a situation where "any valuation of the claim [is] impossible."

Although the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, is not applicable to this case it may be cited as a legislative recognition of the fact that in determining a person's liabilities, debts other than those that are absolute and matured must be included. The first section of that act provides, inter alia, that "'debt' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." * See Schline v. Kine, 301 Pa. 586, 152 A. 845.

---

* This is now the law in sixteen states, to wit: Arizona, Delaware, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, Pennsylvania, South Dakota, Tennessee, Utah, Wisconsin and Wyoming.

As recently as January 9, 1933, in a decision handed down by the United States Supreme Court in American Security Co. of New York v. Teresa Marotta, that court in an opinion by Mr. Justice BUTLER said: "Under the common law rule a creditor having only a contingent claim, such as was that of the petitioner at the time respondent made the transfer in question, is protected against fraudulent conveyances, and petitioner, from the time that it became surety on Mogliani's bond was entitled as a creditor under the agreement to invoke that rule." In that case it was held that the transfer by an indemnitor of the surety on a fireworks exhibitor's bond of her property after a verdict against the exhibitor was returned, but before the judgment was entered, is an act of bankruptcy, on the theory that it was made with intent to defraud the surety even though the surety's claim at such time was contingent and not provable.

Our conclusion is that Reilly and Brock owed a debt and were under a liability to the Bank within the meaning of those words as they appear in the phrase "all debts and liabilities now due or to become due by the said copartnership of Reilly, Brock & Company" in the assignment by Sidney F. T. Brock, individually, and as surviving and liquidating partner of the firm of Reilly, Brock & Co. (assignor), made on October 24, 1930, in accordance with the provisions of the Act of June 4, 1901, supra.

The decree of the court below is reversed. The claim of the Central-Penn National Bank of Philadelphia filed with C. S. W. Packard and C. S. Newhall, assignees in the deed of assignment for the benefit of creditors from Sidney F. T. Brock, individually, and as surviving and liquidating partner of Reilly, Brock & Co., as a general claim of the assigned estate, is reinstated; the record is remitted so that further proceedings may be had not inconsistent with this opinion; costs to be paid by appellees.