## SUBROGATION BY A PRINCIPAL TO THE SECURITY OF HIS ASSISTANT.

Common Pleas Court of Summit County.

LEONIDAS S. EBRIGHT V. JOHN W. CHAPMAN ET AL.

Decided, November 5, 1909.

*Principal and Surety—Assistant Postmaster Short in His Accounts—Postmaster Subrogated to the Security of the Assistant.*

When a postmaster is compelled to make good to the Government a shortage in his office caused by the defalcation of an assistant, he is entitled to be subrogated to the security which the Government held for the fidelity of said assistant, and he may maintain an action against the sureties on the bond given by the assistant for the faithful performance of his duties.

*Grant, Sieber & Mather,* for plaintiffs.

*Slabaugh & Seiberling* and *Allen, Waters, Young & Andress,* contra.

DOYLE, J.

Heard on demurrer to petition.

The plaintiff was postmaster at Akron, Ohio. John W. Chapman was assistant postmaster. The latter had executed, with his co-defendants as sureties, a bond to the United States of America to insure the faithful discharge by him of all the duties and trusts imposed on him as such officer either by law or the rules and regulations of the post office department of the United States and the faithful accounting for and payment over to the proper official of all moneys which should come into his hands as such officer. There came into his hands as such officer the sum of $9,312.85 which he wrongfully converted to his own use.

By the postal laws and regulations of the United States said bond did not relieve the plaintiff from his bond to the same obligee which, among other things, made him responsible for the default of his subordinate, the defendant, Chapman.

By postal laws and regulations the bond of Chapman and his sureties was only additional security of which the government might avail itself in case of loss.

Pursuant to said postal laws and regulations and his bond, the plaintiff was obliged, in order to longer retain his office to prevent his bondsmen taking charge of his office; to prevent confusion in the execution of his public trust, and to prevent being sued for the amount of said shortage on his own bond, to pay such amount of defendant's shortage under protest.

One of defendant Chapman's sureties is now dead and his executors are substituted for him in this action.

The plaintiff claims that by reason of being compelled to pay the amount of the defendant Chapman's defalcation, that he became and was subrogated in right and law to the government in its rights under defendant's bond.

Demurrers have been interposed by the defendants. The main ground of the demurrers urged is that the petition does not state facts sufficient to constitute a cause of action.

The question to be determined is whether the plaintiff is entitled to the right to be subrogated to the rights of the government under the bond and maintain his action against the defendants on the bond so given by them.

By the statutes of the United States and the rules and regulations of the post office department, postmasters are made insurers to the government for the due conduct of the business of their offices and the safe keeping of the public funds, and the salaries constitute the premium for the risks incurred.

The government need look to no one but the postmaster and his sureties to make good any deficits in the funds of his office, but as security in addition to that which it has in its recourse to the postmaster, it has provided by the postal laws and regulations for bonds to be given by assistant postmasters in offices of the class in which the Akron office belongs. These bonds are required to be made to the United States of America.

It is specially stipulated in Section 313 of the postal laws and regulations that these bonds of the assistant postmasters are simply additional security of which the United States may avail itself in case of loss, and the taking of them does not in any wise affect the liability of postmasters upon their official bonds for the proper discharge of all the duties of their office and the due accounting for all public funds which may be in,

or come into, their custody as postmaster; and postmasters and their sureties are responsible on their official bonds for the defaults and defalcations of their subordinates.

As an insurer of the safe keeping of the public funds which come into the custody of the assistant postmaster, the postmaster would have the right to look to the assistant for reimbursement for loss of such funds through the fault of the assistant, if the postmaster were obliged to make good to the government the amount of the loss. Chapman owed a duty to Ebright not to appropriate any of the funds for which Ebright was accountable. When he violated this duty, to Ebright's injury, he became liable to Ebright for the amount of the loss.

In this case the assistant appropriated $9,312.85 of the post office funds and the government compelled the postmaster to make good the amount. When the assistant appropriated the funds in question he immediately became liable to the postmaster under his common law liability, for the postmaster also immediately became liable. The government had two recourses for reimbursement. It could have reimbursed itself by suit on the bond of the defendants. If it had, and the bond would have been sufficient and the obligors responsible, the plaintiff would have been relieved of financial responsibility for the default of Chapman and his obligation as insurer of the funds in question discharged.

The government, however, had recourse to its rights against the postmaster and compelled him to pay the amount.

Ebright did not pay on Chapman's bond. He paid as insurer of the fund appropriated by Chapman. The bond of Chapman was not *functus officio*. Chapman was still in default for the faithful discharge of the duties and trust imposed upon him. He and his sureties had not fulfilled the obligations of that bond. Ebright, on account of his relations to the government and his responsibility for the funds of the government in his office, was compelled to pay the amount in default.

It is an elementary principle of equity that one who makes good the liability of another, for the purpose of protecting his own interest, as, where he is compelled to do so, is entitled to

and may enforce all the securities of the party to whom he has been compelled to pay.  Where one is liable to indemnify another he will, on making good the indemnity, be entitled to succeed to all the ways and means by which the person indemnified might have protected himself against, or reimbursed himself for, the loss.

Ebright made good the liability of Chapman in order to protect his own interest and keep good the indemnity he was liable for to the government, and by this simple principle is entitled to the security which the government had.  It is fair and just.  The sureties can not complain.  They are in no worse plight than if the government had not had recourse to the insurer, Ebright.

Shall it be said that the liability of these sureties for the faithful performance of Chapman's duties depends upon the caprice of government officials as to whom they shall first call upon to make good his defalcations?  They contracted with the government to make good to it this defalcation.  The government officials saw fit to resort to easier and more speedy means of recovering the amount of the loss by compelling Ebright to pay it. By every consideration of equity they should not be thus released to the injury of the plaintiff.  His necessity compelled him to make good that for which they were liable.  He was in no fault so far as they were concerned.  They had vouched for the conduct and trusteeship of Chapman and no injustice to them will be imposed by making their obligation inure to the benefit of another officer of the government, who, on account of his relations to the post office department and his responsibility for all the funds of the government in his office, is compelled in the first instance to make good to the government the amount of their principal's defalcation.

Where a general agent of an insurance company had appointed a local agent and taken from him a bond in the name of the company, with sureties, conditioned that the local agent should pay over all moneys received by him, and the general agent paid to the company certain premiums received by the local agent, but not accounted for by him, it was held, in a suit on the bond thus given, in the name of the company, for

the use of the general agent, that inasmuch as the latter had the appointment of the local agents, and was bound, not only by contract with the company, but in order to maintain his position, to pay over all moneys received through local agents, his settlement with the company of the amount of the defalcation of the principal in the bond, before suit was brought, did not operate to discharge the bond, but he had the right to be subrogated to the rights of the company in respect thereto.

*Hough* v. *Insurance Co.*, 57 Ill., 318, p. 320, the court say:

"Raymond (the general agent) was not co-surety, and it can not properly be assumed that he paid the defalcation as such. Suretyship is an accessory agreement, by which one person binds himself for another already bound. Whereas the liability of the general agent was distinct from and anterior to the liability of the obligors to the bond.

"The principle of subrogation has special application to the facts of this case.

"The rule is, that if the person who pays the debt is compelled to pay, for the protection of his own interests and rights, then the substitution should be made. A mere stranger or volunteer can not thus be subrogated to the creditor's rights.

"The obligation, then, of the general agent to the company, was wholly independent of the obligation of the local agents. In the payment of the defalcation of the local agent, the general agent only discharged his own liability. He only complied with his own agreement, for the purpose of maintaining his position.

"He had the general management of the affairs of the company; upon him rested the entire responsibility; to him alone did the company look for the payment of the premiums, and the local agent was his appointee. He, therefore, acted under compulsion, in the payment of the premiums.

"Such payment was the mere performance of a duty, the fulfillment of an agreement on the part of the general agent, and should not be regarded as an absolute payment of the bond. There was nothing voluntary about it.

"So far as the rights and remedies of the insurance company are concerned, appellants (sureties) and Wallis (local agent) are both principals. Hough (surety who carried case up) was primarily liable for any defalcation, and the company was not compelled to sue Wallis before resorting to its remedy against the surety. When two persons execute a bond, one as

principal and the other as surety, one is equally bound to the obligor as the other.''

There are few cases of subrogation exactly alike, but the above case is nearly on all fours with the case at hand and the same application of the principle of subrogation made in that case, if applied here, will give the plaintiff the right to the relief asked for in his petition.

A few cases showing how the principle has been applied will illustrate its justice and how, considering the relationship of the parties, it is applied for the purpose of accomplishing the substantial ends of justice.

An insurer who has paid a loss has the right to prosecute for his own benefit any person primarily liable to the insured for the injury. This doctrine is recognized and applied in *Newcomb* v. *Insurance Co.*, 22 Ohio St., 382; *Globe Ins. Co.* v. *Sherlock*, 25 Ohio St., 50; *Leavitt* v. *Railway*, 90 Me., 153.

A surety who has been compelled to pay a debt or liability for which another is primarily liable, succeeds to all the rights or other resources which the creditor had of enforcing the liability of the original debtor or securing payment of his claim. Authorities are so numerous on this proposition and the doctrine is so well established that it is only necessary to cite the following which bear somewhat on the case at hand. In *Meyers* v. *Miller*, 45 W. Va., 595, it was held:

"Sureties on the official bond of a sheriff, upon being compelled to make good the default of their principal, will, by the fact of payment, become equitable assignees, and be subrogated to the position of the state in respect of all its securities, liens and priorities, for the purpose of enforcing reimbursement from their principal.''

The court bases this upon the rule given in 24 Am. & Eng. Enc. Law, p. 220, supported by numerous authorities there cited, as follows:

"Sureties on bonds for government officials, upon being compelled to make good the default of their principal, will be subrogated to the position of the government, in respect of all its securities, liens and priorities, for the purpose of enforcing

reimbursement from their principal or contribution from their co-sureties.''

Where a surety paid the debt due from a defaulter to the crown, the Court of Exchequer would allow him to stand in the place of the Crown. *Regina* v. *Salter*, 1 H. & N., 274; *Regina* v. *Robinson*, 1 H. & N., 275*n*.

Sureties on bond of county treasurer held subrogated to right of county to participate as creditor in distribution of his insolvent estate. *Boltz, Estate of*, 133 Pa., 77.

Creditors may also be subrogated to the securities held by sureties which were given to them as indemnity. *Henderson-Achert Lith. Co.* v. *Shillito Co.*, 64 Ohio St., 236, 250; *Pendery* v. *Allen*, 50 Ohio St., 121; *Coons* v. *Clifford*, 58 Ohio St., 480.

Ebright having been compelled to pay the deficit in the funds of his office, caused by the wrongful acts of Chapman, is entitled to be subrogated to the security which the government held for the faithful conduct of Chapman of his office of assistant postmaster.

The demurrer to the petition is overruled.